17596

A. F. DAVIS, Respondent, v. Etta Thompson SPARKS, Appellant

(111 S. E. (2d) 545)

327

*Messrs. Hayes & Hayes* and *Nolen L. Brunson,* of Rock Hill, *for Appellant.*

*Messrs. Roddey & Sumwalt,* of Rock Hill, *for Respondent,*

December 16, 1959.

STUKES, Chief Justice.

This is an action for the foreclosure of a mortgage of real estate in which the mortgagor, now appellant, contests the amount due. She purchased the property from the mortgagee, now respondent, and the mortgage was given to secure the payment of the credit portion of the purchase price.

Respondent had listed the property for sale with a real estate broker, Williams, for $5,750.00, which included the latter's commission. Another broker, named Lake, found the appellant-purchaser and shared in the commission. At the time of the transaction, in October 1948, appellant agreed to make a down payment of $1,500.00 and she and respondent executed a contract of purchase and sale, dated October 2, 1948; both brokers also joined in the execution of the contract.

It recited the consideration of $5,750.00 acknowledged receipt thereon of $200.00 and obligated appellant to pay $1,-300.00 additional with note and mortgage for the balance of $4,250.00 payable $35.00 per month on the first to the tenth of November 1948, and like installments of the same amount between the same dates of each succeeding month until principal and interest be fully paid, with interest at the rate of six per cent per annum, the monthly payments to be applied first to interest and remainder on principal. The other provisions of the contract are of no present relevance.

Later, respondent's deed to the premises dated Oct. 30, 1948, was executed and delivered to appellant at the time of the closing of the transaction, which she has ever since retained. It recited consideration of $5,750.00. Contemporaneously and of even date appellant executed her promissory note to respondent whereby she promised to pay $4,250.00 with interest thereon at six per cent per annum from date, payable in monthly installments of $35.00 on the 30th day of each

month, beginning November 30, 1948, and until said principal and interest should be paid in full, and the monthly payments should be first applied to interest, then principal. The accompanying mortgage bearing the same date recited the amount and terms of the note, quoting from the mortgage, "$4,250.00, with interest thereon at six per cent per annum from date on the whole amount of said principal remaining unpaid from time to time." The note and mortgage, after recordation, were left by respondent with a bank to which appellant regularly made the monthly payments until she fell behind when sick during recent years and finally discontinued payments about a year before this action of foreclosure was commenced.

The complaint was usual in form for foreclosure without deficiency judgment, which was expressly waived by respondent. The unpaid indebtedness was alleged to be $2,791-.88 with some additional, accrued interest. The prayer was for judgment establishing the indebtedness, including ten per cent attorney's fee, as provided in the note and mortgage, that the latter be foreclosed, the equity of redemption barred, the premises sold under the direction of the court, etc. The answer admitted the execution of the sales contract, note and mortgage but alleged an antecedent oral contract whereby the broker, Williams, and respondent agreed that the sales price would be $4,000.00 and that the amount of $5,750.00, included, quoting from the answer, '$1,750.00 interest for about eight years and that there would be no more interest charges''; and that she executed the instruments in reliance upon that representation by the broker, Williams, and by respondent, which were, quoting again, "mistakes on their part or were part of a fraudulent scheme to deceive" appellant. Reformation of the instruments was prayed by way of counterclaim, but appellant joined in the prayer of the complaint for foreclosure of the mortgage, as reformed, and sale of the property under the direction of the court. Respondent made reply to the counterclaim by which the allegations of it were denied. In the reply laches and estoppel were also set up

against the alleged right to reform the three written instruments. (We are not concerned with the latter because, independent of them, the referee and the court concurred in finding that the instruments represented the true agreement of the parties, which we affirm.) The case was referred to a special referee who took the evidence and made his report to the court.

Respondent and an official of the collecting bank testified in support of the allegations of the complaint and established the amount of the mortgage indebtedness. The note and mortgage were admitted in evidence without objection.

The appellant's son, who was about twenty years old at the time of the transaction, testified that he went with his mother to inspect the property before she purchased it. Mr. Lake took them and there they met the respondent. The respondent priced the property at $4,000.00 and agreed to a cash payment of $1,500.00, the balance to be paid at $35.00 per month, which was the agreement of the parties. Mr. Williams was not present on that occasion. Appellant paid $200-.00 to Lake or respondent. The witness also accompanied appellant to Mr. Williams' office where she made the additional cash payment of $1,300.00 and executed the contract. When Williams read it to appellant she would not sign until he assured her that the amount was $5,750.00 because it included all interest on the indebtedness. This was in reply to appellant's contention that the price of the property was $4,000.00. Appellant testified, in contradiction of her son, that Williams was present on their visit to inspect the property when Lake offered it to her for $4,000.00 to which respondent, who was present, agreed. Appellant and her son also disagreed as to whether respondent was present when she signed the contract in Williams' office; she said he was, he that he was not. This is unimportant except to point out discrepancies in their testimony, which are natural because the events were ten years in the past. Her testimony as to her conversation with Williams at his office, when she went to make the additional cash payment of $1,300.00 and exe-

cute the contract, was substantially the same as that of her son, *i. e.,* that Williams explained the amount of $5,750.00 by saying that it included all of the interest which she would have to pay. She is literate and can read with her glasses.

Another witness for appellant was a Mrs. Dill, who was waiting in Mr. Williams' office when appellant executed the contract of purchase and sale, and signed as one of the witnesses to it. She said that there was argument between appellant and the broker before the contract was signed, but the witness knew nothing of the nature of the argument.

The broker, Williams, testified in behalf of respondent in reply and denied any argument or reluctance on the part of appellant to sign the contract, which he read and explained to her before she willingly executed it. He also testified to the listing of the property with him by respondent for sale at $5,750.00, upon which amount he charged and collected his commission. The following is an extract from his testimony:

"Q. At any time did she tell you to your knowledge, sir, that she intended to buy the property for $4,000.00? A. No, sir.

"Q. Now, you heard her testify that you told her that $1,750.00 was interest already added in, is that true? A. I couldn't have figured it out that way.

"Q. Have you ever sold a contract like that, sir, in the entire time you have been in the real estate business? A. No, sir.

"Q. Is there any question in your mind, sir, that this house was sold to her for $5,750.00? A. That is correct."

Respondent also testified in reply and denied offering the property to appellant for $4,000.00 and also denied that he was present at the property when Lake showed it to her. He confirmed that he had listed it with Mr. Williams for sale at $5,750.00.

The referee concluded and reported to the effect that the written instruments are in accord with the true contract of

the parties; and pointed out that the deed and mortgage have been on record for about ten years and appellant had made payments upon the indebtedness during the period of nine years without questioning the amount or terms of it. He accordingly recommended foreclosure and the other relief prayed in the complaint. Appellant excepted to the report of the referee upon the ground that the conclusions of it were against the preponderance of the evidence. The court, after review of the record, overruled the exceptions and rendered judgment in accord with the prayer of the complaint. The exceptions to this court to the decree of the trial court again simply attack the findings of fact upon which the decree is based.

Appellant is confronted with the obstacle of the rule that concurrent findings of fact in a case in equity by master, or referee, and the court will not be reversed on appeal unless the findings are without evidentiary support or are against the clear preponderance of the evidence. 3 West's S. C. Dig., Appeal and Error, Par. 1022, p. 557, *et seq*. Upon consideration of the evidence we conclude without difficulty that appellant has not overcome the obstacle, especially in view of the several unambiguous written instruments which she deliberately executed.

She points out in argument that neither the referee nor the court referred expressly in their respective decisions to the testimony of Mrs. Dill, from which it is inferred that they gave it no weight. It deserved none. She testified, as said above, that she was waiting in Mr. Williams' office for the completion of the execution of appellant's contract to purchase and that there was argument between him and appellant but she said, quoting from her testimony, "I couldn't truthfully say that I remember anything that was said." She repeated that she was waiting when appellant was arguing about her contract, and said: "At the time I couldn't understand why she didn't understand. It sounded simple enough to me * * *." It is noted that the witness was not

personally concerned in the transaction and about ten years had elapsed between it and the trial at which she testified.

Appellant also contends in argument that respondent's failure to produce Mr. Lake as a witness for him raises the inference that his testimony, if he were examined, would be unfavorable to respondent, and that this was given no consideration by the lower court. Indeed, there is no indication in the record that the point was raised there, but we shall consider it *ex gratia*. In like spirit we take the exceptions to include it although they are so general that it is doubtful, at least, whether they are sufficient to raise the question. Supreme Court Rule 4, Sec. 6.

No authority is cited in the brief but apparently reference it had to the rule which is stated in 31 C. J. S. Evidence § 156a, p. 847, as follows: "In the absence of explantion, the failure or refusal of a party to produce evidence may create an adverse inference where such evidence is within his knowledge, and within his power to produce, is not equally accessible to his opponent, and is such as he would naturally produce if it were favorable to him." The most recent example of application of the rule by this court is *Amer. Mut. Fire Ins. Co. v. Green,* 233 S. C. 588, 106 S. E. (2d) 265. Another recent case is *Matthews v. Nat. Fid. Ins. Co.,* 228 S. C. 124, 89 S. E. (2d) 95, citing *Robinson v. Duke Power Co.,* 213 S. C. 185, 48 S. E. (2d) 808. There is a note to the Matthews case in 8 S. C. Law Quarterly 470. Other of our similar decisions will be found in 9 West's S. C. Digest, Evidence, Par. 77, p. 57, *et seq.* Many cases from other jurisdictions are collected in the annotations in 135 A. L. R. 1384, and 5 A. L. R. (2d) 905. Generally, the rule is applied when the uncalled witness is an agent, employee, relation, or associate of the party failing to call him, or within some degree of control of said party. It is said in 20 Am. Jur. 193, Evidence, Sec. 189, "It is a general rule that a party is not to be prejudiced by his failure to call a witness who is equally available to the other party." But this may not always be true; it depends upon the

particular circumstances of the case at hand. See the cited texts and annotations. The record here does not disclose, except by presumption, that Lake is living; ten years have passed since the transaction; and for aught in the record he was no more available to respondent than he was to appellant.

We do not think that under the facts of this case a presumption or inference should be raised against respondent for his failure to call Mr. Lake as a witness. He was not respondent's employee and there is nothing to indicate that respondent has any control over him. Respondent did not list the property for sale with him. It was listed with Mr. Williams for whom Lake found the appellant-purchaser and executed the contract along with Williams; and Williams split his sales commission with him.

Moreover Williams testified as did respondent. A litigant is not required to produce as a witness every person who may give evidence in his favor; and his failure to do so does not necessarily imply a design on his part to suppress the truth. Inference from the unexplained failure of a party to call an available witness that the testimony of such witness would have been unfavorable may be drawn only where, under all of the circumstances of the case, the failure to produce such witness creates suspicion of a willful attempt to withhold competent testimony. Such suspicion is generally held not warranted where the material facts assumed to be within the knowledge of the absent witness have been testified to by other qualified witnesses. See annotation 135 A. L. R. 1375, *et seq.*

The pleadings gave no notice to respondent that appellant would rely upon any alleged representation of respondent by Lake. He was not referred to in the lengthy answer and counterclaim of appellant. On the contrary, the name of Williams was mentioned no less than ten times in the pleading and it was alleged that he, as the agent of respondent, and respondent had represented the sales price of the property to

be $4,000.00. Under these circumstances it was natural that respondent should enter upon the trial without having subpoenaed Lake, if he was living and available; to raise a presumption against him because he did not, would in view of the contents of appellant's pleading, be like springing a trap upon him.

From the facts before us there is no more reason to indulge a presumption against respondent for his failure to produce Lake as a witness than against appellant for her failure to produce him. It was appellant's contract in which Lake joined in the execution, as well as respondent's and Lake was not respondent's broker.

The exceptions are overruled and the judgment affirmed.

TAYLOR, OXNER and LEGGE, JJ., concur.

Moss, J., did not participate.