18599

The STATE, Respondent, v. Pauline WATTS, Appellant
(152 S. E. (2d) 684)

Messrs. *Robert E. Kneece, Frank L. Taylor, Kermit S. King* and *Frank L. Taylor, Jr.,* all of Columbia, *for appellant,*

*John W. Foard, Jr., Esq., Solicitor,* of Columbia, *for respondent,*

February 3, 1967.

G. BADGER BAKER, Acting Associate Justice.

The appellant, Pauline Watts, was tried in the Court of General Sessions for Richland County on an indictment charging the murder of Francis Watts, appellant's husband, on December 24, 1964. Appellant was found guilty of manslaughter and was sentenced to imprisonment for eight years.

At the conclusion of the testimony offered by the State and after the reception of all evidence in the case, the appellant moved for direction of verdict of not guilty. The motions were denied by the trial judge.

The principal ground in each motion, preserved by exceptions to the rulings, is the insufficiency of evidence, *aliunde* extrajudicial statements of appellant to prove the *corpus delicti.* It is admitted by appellant that the first

element of the *corpus delicti,* that is, the fact of the death of Francis Watts, has been sufficiently proven by the State. It is, however, contended that the State failed to legally or sufficiently prove the second element, that the death of Watts was brought about through the criminal agency of another.

Francis Watts, a deputy sheriff for Richland County, was fatally wounded at his home, in Richland County, about the hour of six o'clock in the evening. He was carried to the emergency room of the Columbia Hospital and was examined by Dr. Henry F. Hall.

Dr. Hall stated Watts was dead when he examined him, that there was a pistol shot wound, below the angle of the right jaw, which went through the neck, severed the trachea and esophagus and came out the left side of the neck. The cause of death was the pistol shot wound in the neck, hemorrhage and anoxemia.

Benny Dixon, a deputy sheriff, accompanied by Constable Leroy Cherry, went to the Watts home in response to a telephone call or a radio dispatch. The officers arrived a few minutes after six o'clock. They entered the living room from the front door and found Francis Watts, unconscious, on the floor, his head and shoulders in a pool of blood. The body was in front of a couch against a wall of the living room and immediately adjacent to the doorway into the dining room. Mr. Dixon testified that Francis Watts, Jr., a son of the deceased, then fourteen or fifteen years of age, was down beside his father trying to render aid by attempting to stop the flow of blood.

Mr. Dixon and Mr. Cherry went to the aid of Mr. Watts and found that he was in bad shape. Mr. Cherry then went into the dining room and returned to the living room, followed by Mrs. Watts, and handed Mr. Dixon a .38 service revolver belonging to the deceased. Mr. Cherry also delivered to Officer Dixon five live cartridges and one spent cartridge. Officer Cherry then went to the front of the home to direct the ambulance which had not arrived but had been summoned.

Pausing at this point in the testimony there is, in our opinion, clear and substantive proof of the *corpus delicti.* The deceased was found unconscious and lying on the floor in a puddle of blood. The only weapon found was in an adjoining room and this pistol contained five live cartridges and one spent cartridge. The fact that the mortal wound was inflicted by a pistol, a deadly weapon, creates a rebuttable presumption of the malicious use of a firearm. The facts and circumstances in this case are as strong, if not stronger, as the circumstances to be found in *State v. Thomas,* 222 S. C. 484, 73 S. E. (2d) 722.

Pertinent to the proof of *corpus delicti* is the following from *State v. Epes,* 209 S. C. 246, 39 S. E. (2d) 769:

"In proving *corpus delicti,* the law demands the best proof which in the nature of the case is attainable. Direct and positive evidence is not essential. It is now well established that the elements constituting the *corpus delicti* in a homicide—the death of the person whose life is alleged to have been taken feloniously, and the criminal agency of another in taking the life of such person—may be sufficiently proved by presumptive or circumstantial evidence, where that is the best evidence obtainable."

The appellant has phrased her exceptions on the theory that proof of the *corpus delicti,* and the guilt of the accused, cannot be based upon the extrajudical statements or confession of appellant. The facts do not support the contention.

Officer Dixon testified that when Mr. Cherry went to the front of the home to await and direct the ambulance he asked Mrs. Watts, the appellant, what happened and she answered "that she had shot Francis with his own gun." There was no objection to this testimony. The Solicitor did not attempt amplification of the statement on direct examination. Appellant's counsel without any reservation, cross-examined Officer Dixon about this statement. It was developed on cross examination that appellant stated the

deceased and Francis Watts, Jr., were in the living room and the deceased was beating, whipping or fighting the boy who was sitting on the couch, that she entered the doorway, into the living room and fired the pistol, and that "I shot Francis with his own gun."

Appellant maintains that the case of *Miranda v. State of Arizona,* 384 U. S. 436, 86 S. Ct. 1602, 16 L. Ed. (2d) 694, 706, 707, requires the exclusion of the appellant's statement or confession from the evidence.

Apart from the ruling in *Johnson v. State of New Jersey,* 384 U. S. 719, 86 S. Ct. 1772, 16 L. Ed. (2d) 882, Vol. 16, that the principles announced in *Miranda v. State of Arizona, supra,* would apply to trials begun after June 13, 1966, (this case was tried in June, 1965), the *Miranda* case is not pertinent or applicable. Appellant's statement "that she shot Francis with his own gun" was received without objection. Appellant's counsel, on cross examination not only elicited the same statement, but elected to amplify the statement from Mrs. Watts to officer Dixon. There was no motion, at any time, to strike the statement from the record.

When the statement, admission or confession was given the appellant was not undergoing custodial interrogation, nor was she under arrest. Officer Dixon was engaged in a fact-finding process at the scene of the homicide, very shortly after the offense had been committed, without any restraint or deprivation of appellant's freedom of action in any significant way. The arrest or restraint occurred after the statement. It is stated in *Miranda v. State of Arizona,* supra, that "general on-the-scene questioning as to facts surrounding a crime or other general questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process is not affected by our holding."

Appellant's exceptions to the refusal of the trial judge to direct a verdict of not guilty at the close of testimony in behalf of the State and at the conclusion of all evidence are found to lack any sustaining merit.

After the jury had received their instructions upon the principles of applicable law and at the appropriate time appellant's counsel requested the trial judge to charge the jury on involuntary manslaughter, and, further that the failure of the State to call witnesses, under subpoena by the State to testify as to material facts, created the inference that such testimony, if presented, would have been adverse to the State.

It is the position of appellant that there is sufficient evidence from which the jury could have inferred that appellant believing her son was being attacked, pointed a gun at her husband and although she did not intend to shoot her husband the weapon was caused to fire when the deceased struck the pistol while attempting to strike the boy.

It was established through the cross examination of Officer Dixon that the service revolver had an "easy type trigger," one that requires very little pressure to release the trigger when cocked. This evidence in conjunction with the testimony of Francis Watts, Jr., is the basis for the alleged error of the trial judge in refusing to submit involuntary manslaughter to the jury.

According to this witness his mother and father had been drinking and quarreling, but there had been very little consumption of an alcoholic beverage by appellant. The arguing had reached the point, in the evening of December 24th, of an exchange of light blows between appellant and deceased. The son intervened to stop the argument and the deceased told Francis not to tell him what to do and commenced swinging at him. Francis then sat down on the couch and his father continued slapping at him with his hands. Appellant came in the living room with the pistol in both hands and asked deceased to quit trying to slap Francis, Jr., but the deceased did not comply. At this time the appellant was two or three feet from the deceased and in front of the couch on which the son was sitting. The pistol was discharged and the deceased fell in front of the couch where he was found by Officer Dixon.

Francis Watts, Jr., stated the gun, when discharged, was close to his father, and in response to the question, "could your father's arms hit that gun?", he replied, "Yes, that could have happened." This witness also testified that "she (his mother) pulled the trigger and shot him."

In any event this evidence does not suggest negligence in the use of a dangerous instrumentality. The son did not state that his father's arms or hands struck the pistol and caused it to discharge. The statement of appellant and the testimony of Francis Watts, Jr., would indicate possible self-defense of a member of the family, an issue decided by the jury adverse to appellant. Negligence could not be attributed to appellant if in attempting to defend her son the pistol was struck by deceased, while trying to hit the son, and caused to discharge. If the deceased had struck the pistol and because of its "easy trigger" precipitated its firing it would have been, as it relates to appellant, an accidental or unintentional homicide without fault or neglect by appellant in defense of Francis Watts, Jr. The charge or instructions to the jury are not a part of the appellate record and, presumably, the foregoing point was determined in the trial. The appellant was not sworn as a witness.

The trial judge was correct in refusing to submit involuntary manslaughter to the jury.

The final exception comes from the fact that the State did not present Constable Leroy Cherry and Chief Deputy Jimmy Harrison as witnesses for the State. Mr. Cherry's participation in the investigation has been referred to in this opinion. Mr. Harrison arrived at the home after Mr. Dixon and conducted an investigation, but the extent and results of this investigation are not disclosed in the record.

These officers were present in the courtroom during the entire trial. They were subject to call by the State or by the accused. So far as this record disclosed, they were available to either litigant.

88

A litigant, which includes the State of South Carolina in its prosecution in a general sessions court, "is not required to produce as a witness every person who may give evidence in his favor; and his failure to do so does not necessarily imply a design on his part to suppress the truth. Inference from the unexplained failure of a party to call an available witness that the testimony of such witness would have been unfavorable may be drawn only where, under all the circumstances of the case, the failure to produce such witness creates suspicion of a wilful attempt to withhold competent testimony. Such suspicion is generally held not warranted where the material facts assumed to be within the knowledge of the absent witness have been testified to by other qualified witnesses. See annotation 135 A. L. R. 1375 *et seq.*" *Davis v. Sparks,* 235 S. C. 326, 111 S. E. (2d) 545.

The record is devoid of any suspicion of an attempt to withhold competent testimony that may have been favorable to the accused by the State's decision not to call Officers Cherry and Harrison as witnesses. Appellant's decision not to have these offcers as witnesses and thereby place a presumption of adversity upon the State cannot rest upon an assumption that the officers, because the deceased was an officer of the law, could very well have been prejudiced against the appellant, making it difficult, if not impossible, for the defense to call either or both.

Appellant's exceptions are dismissed and the judgment of the lower court is affirmed.

Lewis, Acting C. J., Bussey and Brailsford, JJ., and Lionel K. Legge, Acting Associate Justice, concur.