508 S.E.2d 851

**The STATE, Respondent,**

v.

**James Michael CHARPING, Appellant.**

No. 24855.

Supreme Court of South Carolina.

Heard Sept. 24, 1998.

Decided Nov. 23, 1998.

Rehearing Denied Jan. 6, 1999.

Assistant Appellate Defender Robert M. Dudek, of S.C. Office of Appellate Defense, of Columbia, for appellant.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka, Senior Assistant Attorney General William E. Salter, III, all of Columbia, and Solicitor Donald V. Myers, of Lexington, for respondent.

WALLER, Justice:

Charping was convicted of murder, conspiracy, kidnapping, and first-degree sexual conduct, and was sentenced to death. This Court reversed his murder conviction and remanded for a

new trial.[1] *State v. Charping*, 313 S.C. 147, 437 S.E.2d 88 (1993) *(Charping I )*. Charping was again convicted of murder and sentenced to death. We affirm.

## FACTS

Charping, along with cohorts Jeffrey Whitlock, and John Thoman, abducted Joann Pruitt, the victim in this case, and drove her to an isolated area near a pond in Lexington County, where she was raped, tortured, and drowned. The facts are set forth more fully in Issue 1.

Upon his retrial, Charping was again convicted of murder. The jury found the aggravating circumstances of kidnapping and torture and recommended a sentence of death.

## ISSUES

1. Did the Court err in ruling Charping could not comment on the State's failure to call Jeffrey Whitlock as a witness?

2. Did the Court err in refusing to permit Charping to introduce evidence of Whitlock's convictions and life sentence?

3. Did the Court err in requiring Charping to decide, prior to the solicitor's sentencing phase closing argument, whether he would personally address the jury?

## 1. COMMENT ON FAILURE TO CALL WITNESS

■ Charping's cohort, Jeffrey Whitlock pled guilty to murder, kidnapping, criminal sexual conduct, and criminal conspiracy for which he was sentenced to life imprisonment, thirty years, and five years. Whitlock was not called as a witness at trial either by the state or by Charping. Charping contends the trial court abused its discretion in refusing to allow him, at sentencing, to comment on the state's failure to call Whitlock as a witness. We disagree. Under the circumstances of this case, we find no abuse of discretion in the trial court's ruling.

---

1. Charping's murder conviction was reversed under an *in favorem vitae* review for the failure to obtain an on-the-record waiver of his right to make the final argument to the jury. His remaining convictions were not subject to an *in favorem* review and were therefore unaffected by our reversal.

*State v. Patterson*, 324 S.C. 5, 482 S.E.2d 760 (1997) (trial judge vested with broad discretion in determining propriety of closing argument; rulings on such matters will not be disturbed absent showing improper closing deprived defendant a fair trial).

This Court has previously stated "it is always proper for an attorney in argument to the jury to point out the failure of a party to call a witness." *State v. Hammond*, 270 S.C. 347, 356, 242 S.E.2d 411, 415 (1978). *See also State v. Bamberg*, 270 S.C. 77, 240 S.E.2d 639 (1977) (comment on failure to produce witness permissible); *State v. Cook*, 283 S.C. 594, 325 S.E.2d 323 (1985) (no error in allowing solicitor to comment on defendant's failure to produce his wife); *State v. Shackelford*, 228 S.C. 9, 88 S.E.2d 778 (1955) (not improper for prosecutor to comment upon defendant's failure to produce witnesses, accessible to the accused, or under his control, whose testimony would substantiate his story).[2]

However, in *Davis v. Sparks*, 235 S.C. 326, 333, 111 S.E.2d 545, 549 (1959), we recognized the general rule that "a party is not to be prejudiced by his failure to call a witness who is equally available to the other party." *Citing* 20 Am.Jur. 193 *Evidence*, § 189. *See also Baker v. Port City Steel Erectors*, 261 S.C. 469, 200 S.E.2d 681 (1973) (unfavorable inference arising from failure of a party to call an available material witness may be drawn only where under all circumstances of case the failure to produce such witness creates suspicion of a wilful attempt to withhold competent evidence). Here, Whitlock was clearly accessible to both the state and the defense, and there is no reason Charping could not have called him as a witness.[3] Accordingly, under these circumstances, we find the

---

**2.** Generally, the situation arises, for example, when the defendant claims an alibi ·or insanity defense, then fails to call a witness who would either have provided the alibi, *State v. Bamberg, supra*, or who had knowledge of his mental condition. *State v. Cook, supra*. A similar result has occurred when police fail to call an arresting officer. *State v. Peden*, 157 S.C. 459, 154 S.E. 658 (1930). *See also Canady v. Martschink Beer Distributors*, 255 S.C. 119, 177 S.E.2d 475 (1970) (generally, the rule is applied when the uncalled witness is a relative of the party failing to call such witness, or within some degree of control of said party).

**3.** In fact, when the solicitor objected to Charping commenting on the state's failure to call Whitlock as a witness, claiming Whitlock was "just

trial court acted within its discretion in limiting Charping's comment.

Moreover, an adverse inference from the unexplained failure of a party to call an available witness is generally held not warranted where the material facts assumed to be within the knowledge of the absent witness have been testified to by other qualified witnesses. *State v. Watts,* 249 S.C. 80, 152 S.E.2d 684 (1967). Here, the material facts were testified to by John and Vanessa Thoman.

John Thoman, who was with Charping and Whitlock the night of the murder, gave detail, as follows. He testified that the victim, Joann Pruitt, had gone with them to help them purchase a small quantity of marijuana. After purchasing the marijuana, they stopped at a convenience store to purchase cigarette rolling papers. While at the store, Charping told him he had decided to kill the victim. Thoman testified Charping pulled the victim from the car and started beating her "upside the head" two or three times until she fell to the ground. Charping then told him and Whitlock he intended to rape the victim and brought her into the woods.[4] Charping brought the victim out of the woods 15–20 minutes later and told her she was going to have sex with all three men. Charping then brought her back into the woods and called for Whitlock and Thoman approximately 10 minutes later, at which time Whitlock went into the woods while he, Thoman, stayed at the car. Thoman went into the woods approximately 30 minutes later where he saw the victim on her hands and knees naked, with Charping standing above her punching her in the head, upper body and back, while Whitlock claimed he was going to have anal sex with her.

Thoman returned to the car briefly then went back to the woods a few minutes later at which point Charping had a stick, similar to a log, 3–4 feet long and 4–5 inches in diameter which he was holding like a baseball bat and hitting the victim

as available to them as he is to us," defense counsel replied, "Mr. Myers can comment on my failure to call him. That's exactly right." There was no suggestion at trial that Whitlock was unavailable to the defense.

4. Thoman never actually saw Charping raping the victim and the sentencing phase jury did not find the aggravating circumstance of CSC.

"everywhere he could." Whitlock then picked up a stick and joined in on the beating for 4 or 5 minutes. Charping ordered the victim to stand up and started pushing her in her back with his stick towards the pond. Near the pond, Charping told her to stop and bent over and cleared an area in the pine straw. Charping made the victim get down into the cleared area and began hitting and kicking her again, using all his strength, taking 2–3 steps back and coming up to kick her. Whitlock joined in and hit her once or twice, and then took a stick and rammed it between the victim's legs. Finally, Charping and Whitlock ceased beating the victim when she was curled up like a ball with her hands over her head. Charping forced her onto her stomach and grabbed her around the neck with both hands and tried to break her neck. Charping then asked her how she wanted to die and how she liked being raped. He commented to Whitlock and Thoman that the victim wouldn't die and asked them for a knife, which neither had. Charping then straddled the victim and placed a log across her neck and started forcing down on it with "all his might," attempting to strangle her. When this didn't kill her, he forced her to her feet and walked her out into the pond. He placed his leg over her back and forced her head under the water, then let her up for a second or two. He then pushed her back under the water for 3–4 minutes until she was dead. He dragged the victim's body back to shore by the hair and covered her with pine straw. The three gathered the victim's clothes and went to the car. Charping told Whitlock and Thoman that if they told anyone about the murder, he'd kill them too.

Thoman's sister, Vanessa Thoman, who was Charping's girlfriend at the time of the murder, also testified at trial. Although she did not witness the murder, she testified she went back to the murder scene with Charping to bury the body because she didn't believe him when he told her he'd killed someone. When they got to the victim's body and Vanessa attempted CPR, Charping told her "If you bring her back, I will kill her again," and that if she, Vanessa, screamed, he would kill her too.

As summarized, it is clear the material facts were testified to by John and Vanessa Thoman such that no adverse inference was warranted by the state's failure to call Whitlock as a

witness. *State v. Watts, supra.* Accordingly, the court committed no error in disallowing the comment.

■ Finally, given the testimony of the Thomans, indicating the incredible brutality and torture inflicted upon Joann Pruitt by Charping, we find his inability to comment on the state's failure to call Whitlock could not have affected the result. Accordingly, any conceivable error was harmless beyond a reasonable doubt. *Accord Arnold v. State,* 309 S.C. 157, 420 S.E.2d 834 (1992) (error is harmless where, beyond a reasonable doubt, it did not contribute to verdict obtained).

## 2. CO-DEFENDANT'S SENTENCE

■ Charping next asserts he should have been permitted to introduce evidence Whitlock received a life sentence, contending it was relevant to the circumstances of the crime, and the aggravating circumstance of criminal sexual conduct. We disagree.

■ The sentencing jury in a capital case may not be precluded from considering as mitigating evidence any aspect of the defendant's character or record and any circumstances of the crime that may serve as a basis for a sentence less than death. *State v. Bell,* 305 S.C. 11, 406 S.E.2d 165 (1991), *cert. denied* 502 U.S. 1038, 112 S.Ct. 888, 116 L.Ed.2d 791 (1992). A codefendant's "demeanor" does not fall within this category of evidence. *Id.* We find evidence Whitlock was sentenced to life is irrelevant to establish **Charping's** character, and does not demonstrate the "circumstances of the crime."

Charping cites *State v. Brewington,* 267 S.C. 97, 103, 226 S.E.2d 249, 251 (1976) for the proposition that "the sentence imposed upon a codefendant for the same offense and upon others for similar offenses are among a wide variety of factors which may be properly considered in determining a proper punishment." *Brewington* is inapposite. *Brewington* merely held the trial court did not commit reversible error in considering, among other factors, the sentence of an accomplice; *Brewington* does not stand for the proposition that trial courts are **required** to consider the sentences of codefendants.

Further, *Brewington* is not a death penalty case. In South Carolina, the function of conducting a proportionality review in

death penalty cases is for this Court. S.C.Code Ann. § 16–3–25. Accordingly, it is not for the jury in a capital case to weigh the sentence of similarly situated defendants. *Accord Brogdon v. Blackburn,* 790 F.2d 1164 (5th Cir.1986) (codefendant's life sentence not relevant to defendant's character or offense; fact is relevant only to the task of comparing the proportionality of Brogdon's sentence to the sentences of. others similarly situated, a function assigned by statute to State Supreme Court).

Finally, a number of courts hold a co-defendant's acquittal or life sentence is not a relevant mitigating circumstance. *See e.g., State v. Bond,* 345 N.C. 1, 478 S.E.2d 163 (N.C.1996) (accomplices' punishment is not an aspect of the defendant's character or record nor a mitigating circumstance of the particular offense); *Roche v. State,* 596 N.E.2d 896 (Ind.1992); *State v. Berry,* 72 Ohio St.3d 354, 650 N.E.2d 433 (Ohio 1995); *People v. Carrera,* 49 Cal.3d 291, 261 Cal.Rptr. 348, 777 P.2d 121 (Cal.1989); *Johnson v. State,* 477 So.2d 196 (Miss.1985); *Commonwealth v. Frey,* 520 Pa. 338, 554 A.2d 27 (Pa.1989) (codefendant's life sentence not a mitigating circumstance as to defendant's role in crime). We agree with the reasoning of these courts.

■ The trial court properly excluded evidence of Whitlock's convictions and sentence.[5]

### 3. FINAL JURY ARGUMENT

■ Finally, Charping claims his waiver of the right to address the jury was rendered involuntary by the trial court's requirement that he decide, prior to the solicitor's closing argument, whether he wished to exercise the right. We disagree.

■ S.C.Code Ann. § 16–3–28 requires "in any criminal trial where the maximum penalty is death or in a separate

---

5. We do not suggest that evidence of a codefendant's **participation** may not be mitigating. However, although a codefendant's participation might be relevant to the circumstances of the offense and therefore mitigating, the fact that codefendants received lesser sentences could no more be considered mitigating than could the fact that a codefendant received the death penalty be aggravating. *Accord State v. Gerald,* 113 N.J. 40, 549 A.2d 792 (N.J.1988).

sentencing proceeding following such trial, the defendant and his counsel shall have the right to make the last argument." We have repeatedly held there must be a knowing and voluntary waiver of the right to final argument on-the-record.[6] *See State v. Orr*, 304 S.C. 185, 403 S.E.2d 623 (1991); *State v. Reed*, 293 S.C. 515, 362 S.E.2d 13 (1987). However, we have never held, nor does the statute require, the decision whether to personally address the jury must be made **after** the solicitor's closing.[7] We find it is within the trial court's discretion to require a decision after the presentation of evidence, but prior to the state's closing argument.

Moreover, the record is abundantly clear Charping was well aware of his right to personally address the jury and that his waiver of that right was knowing and voluntary. Although he would have preferred to make a decision following closing arguments, there is absolutely no evidence he did not understand his right, or that the decision was not knowing and voluntary.

## CONCLUSION

Charping's conviction for murder is affirmed.[8] Pursuant to S.C.Code Ann. § 16–3–25(c)(1985), we find the death sentence

---

6. Charping's original murder conviction was reversed for this reason. *See Charping I.*

7. The cases cited by Charping are inapplicable. He cites *Brooks v. Tennessee*, 406 U.S. 605, 92 S.Ct. 1891, 32 L.Ed.2d 358 (1972) and *Ferguson v. Georgia*, 365 U.S. 570, 81 S.Ct. 756, 5 L.Ed.2d 783 (1961), both of which involved the decision on whether to exercise the right to **testify.** In *Brooks*, the Court invalidated a Tennessee statute which required the defendant, if he planned to, to testify prior to any other testimony for the defense. The Court held this required a premature decision precluding an informed tactical decision based on all the **evidence** offered at trial. A solicitor's closing argument is not evidence. *Sosebee v. Leeke*, 293 S.C. 531, 362 S.E.2d 22 (1987).

8. Charping's remaining issues are affirmed pursuant to Rule 220(b), SCACR and the following authorities: Issue 4—*State v. Powers*, 331 S.C. 37, 501 S.E.2d 116 (1998); *State v. Hill*, 331 S.C. 94, 501 S.E.2d 122 (1998) (defendant not entitled to open-ended inquiry regarding prospective jurors' sentiments on each and every possible aggravating and mitigating circumstance; general questions as to whether jurors would consider mitigating circumstances were sufficient). Issue 5— *State v. Kornahrens*, 290 S.C. 281, 350 S.E.2d 180 (1986); *State v.*

in this case is proportionate to that in similar cases and is neither excessive nor disproportionate to the crime. *State v. Conyers,* 326 S.C. 263, 487 S.E.2d 181 (1997); *State v. Byram,* 326 S.C. 107, 485 S.E.2d 360 (1997); *State v. Nance,* 320 S.C. 501, 466 S.E.2d 349, *cert. denied,* 518 U.S. 1026, 116 S.Ct. 2566, 135 L.Ed.2d 1083 (1996).

**AFFIRMED.**

TOAL, Acting C.J., BURNETT, J., and GEORGE T. GREGORY, Jr. and L. HENRY McKELLAR, Acting Associate Justices, concur.

---

*Nance,* 320 S.C. 501, 466 S.E.2d 349, *cert. denied,* 518 U.S. 1026, 116 S.Ct. 2566, 135 L.Ed.2d 1083 (1996) (relevance, materiality and admissibility of photographs are matters within the sound discretion of the trial court).