UNITED STATES of America,
Plaintiff-Appellee,

v.

Jorge Antonio ZIMERI–SAFIE,
Defendant-Appellant.

No. 78–5086.

United States Court of Appeals,
Fifth Circuit.

Dec. 11, 1978.

James J. Hogan, Joseph Mincberg, Miami, Fla., for defendant-appellant.

Jack V. Eskenazi, U. S. Atty., Miami, Fla., Gary L. Betz, Sp. Atty., Kathleen A. Felton, William G. Otis, Atty., Dept. of Justice, Washington, D. C., for plaintiff-appellee.

Before WISDOM, AINSWORTH and CLARK, Circuit Judges.

CHARLES CLARK, Circuit Judge:

The principal issue in this appeal from multiple firearms convictions requires review of the district court's evidentiary rulings on the relevancy and prejudicial effect of "other acts" evidence which we recently discussed en banc in *United States v. Beechum*, 582 F.2d 898 (5th Cir. 1978). The defendant also attacks a portion of the judge's charge to the jury which modified the reasonable doubt standard required for conviction so as to require that it be a doubt which was "substantial." A panel of this court has recently addressed that issue also. *United States v. Rodriguez*, 585 F.2d 1234, (5th Cir., 1978). The third error asserted involved the admission on redirect examination of expert witness testimony which defendant complains incorporated the ultimate issue of law in the case—legality of his alien status. We affirm the judgment appealed from as to all counts.

Defendant was charged in four separate counts, covering each of two pistols, with knowingly receiving and possessing a firearm while being an alien illegally or unlawfully in the United States, a violation of 18 U.S.C. § 1202(a)(5) App., and knowingly making a false statement as to the legality of his alien status with the intent to deceive a firearms dealer, a violation of 18 U.S.C. § 924(a).

On August 20, 1951, Jorge Zimeri-Safie (Zimeri) was admitted to the United States as an N Quota Permanent Immigrant and issued a "green card" photographic identification document to attest this status. On January 27, 1953, the defendant departed from the United States under a re-entry permit which by its terms expired November 24, 1953. On 33 separate occasions between January 28, 1957, and April 30, 1976, the defendant entered the United States as a temporarily admitted alien under B-2 visas which authorized specified stays in the United States of varying lengths of time, some as short as three days and others as long as one year. On each of the B-2 visas granted to defendant to authorize these visits, the country of his citizenship was shown as Guatemala. They represented that he had a Guatemalan passport and gave a Guatemalan address as a permanent place of residence. The last of these B-2 visas covered a visit beginning on April 30, 1976, and was valid through May 31, 1976. A certificate of search by the Immigration and Naturalization Service disclosed no record of a departure from or re-entry to the United States by the defendant thereafter.

In separate transactions on September 29, 1976, and October 6, 1976, defendant purchased a .38 caliber Walther Model PP pistol and a .25 caliber Jr. Colt pistol from a registered firearms dealer in Pompano Beach, Florida, representing his residence address to be 20 South Compass Drive, Fort Lauderdale, Florida, and using a Florida driver's license for identification. On the Firearms Transaction Record which defendant executed in connection with each of these purchases, he replied "No" to the question "Are you an alien illegally in the United States?" On October 21, 1977, the

defendant and his apartment at the Sandman Hotel in Pompano Beach, Florida, were searched by an agent of the Bureau of Alcohol, Tobacco, and Firearms, Department of the Treasury, who seized from the apartment a book entitled *The Paper Trip*, which described a number of means of acquiring false identification. The book was copyrighted in the year 1977. One of the methods of obtaining false identification which the book described involved the use of names taken from tombstones of persons having a birthdate near to that of the one desiring a false identity and whose date of death would indicate that the deceased was too young to have required any form of permanent identification. With this information the reader was told he could obtain a false birth certificate and other documents leading to the acquiring of a false United States passport. At the time of the search, the agent also seized defendant's address book which contained names and dates of birth and death of persons near to the defendant's age, which entries matched names and dates appearing on tombstones located in a nearby Ft. Lauderdale, Florida, cemetery.

### Taking *The Paper Trip*

Defendant contends that the trial court erred in allowing the government to introduce (1) *The Paper Trip* extracts describing how to use tombstone records to acquire a false United States passport, and (2) copies of the pages from defendant's address book which disclosed tombstone information from a local cemetery. Defendant asserts that these items of evidence were grossly irrelevant within the meaning of Fed.R. Evid. 401. Though the manual was found in his apartment at a time when he was present, another person who was also present could have been its possessor. Moreover, the date of discovery and seizure was more than a year subsequent to the time the offending firearms forms had been executed, and the copyright date of the manual proved it was not in existence at that time. Alternatively, defendant contends that if relevant, the evidence should have been excluded on the grounds of its undue prejudice under Rule 403. Defend-

ant asserts that due to the failure to connect him to the material and its temporal separation from the criminal act charged its probity was slight, but that in holding him up as a devious person who wished to travel under false identity its prejudice was great. Finally, he contends the documents were not admissible as evidence of acts tending to prove knowledge or intent as opposed to bad character under Rule 404(b).

The government asserts that the evidence was correctly admitted because it tended to prove that defendant acted knowingly in falsifying his alien status in connection with the acquisition of these firearms, thereby bringing the materials within the ambit of Rule 401 as "evidence having [a] tendency to make the existence of" guilt, knowledge, or intent "more probable . . . than [it] would be without the evidence." Specifically, the government asserts that defendant's reliance upon his original status as a "green card" permanent resident immigrant made it necessary to establish that defendant knew this immigrant status, as well as any B–2 authority he held, had terminated at the time he bought the firearms. The government also asserts that the probative value of the challenged evidence was not substantially outweighed by the danger of unfair prejudice despite the lapse of slightly over one year between the firearms transactions and the date it was discovered at defendant's apartment. More precisely, the government recites that the evidence was probative because it showed that a year later, and without any change in his alien status, defendant apparently felt he needed to acquire false identification. They urge this has a tendency to establish that defendant knew he was an illegal alien when he acquired the firearms. The government further asserts that the prejudice to defendant of the evidentiary materials was slight since they did not establish any criminal action, and plausible innocent explanations of their possession existed, such as that defendant could have used the information for writing a mystery story. The government also points out that the jury's use of the evidence was limited by instructions, both at the time of its ad-

mission and at the court's final charge, to consideration only on the question of knowledge or intent. In any event, the government says, since the evidence did not establish criminal activity, it was not nearly so prejudicial as evidence of other crimes, which are allowed in evidence under Rule 404(b).

The trial in this case was conducted without the benefit of our en banc decision in *United States v. Beechum*, 582 F.2d 898 (5th Cir., 1978). There, we dealt with the admissibility of "other acts" evidence by a postman charged with taking a silver dollar from the mails, intending to keep it. At the time of Beechum's arrest, a search disclosed not only the silver dollar, which had been established to have come from the mails, but also two department store credit cards issued in the names of addressees residing on mail routes Beechum had previously served. No proof was adduced to show how Beechum acquired the cards. We approved the admission in evidence of the cards, limited to their use by the jury to establish Beechum's intent to unlawfully keep the silver dollar.

*Beechum* adopted a two-step test for evidence of this sort. First, the court must determine that the "other acts" evidence proffered is relevant to an issue other than the defendant's character. The standard to be used is found in Rule 401: does it have "any tendency to make the existence of [knowledge or intent] more probable . . than it would be without the evidence?" If this step is satisfied, the second step requires an assay of the effect of Rule 403 which bars even properly relevant evidence when its probative value is "substantially outweighed by the danger of unfair prejudice." This calls for a common-sense assessment of all circumstances surrounding the "other acts" evidence. In particular, probity must be determined with regard to the extent to which a defendant's unlawful intent is established by other proof; and the overall similarity of the acts and the charged offense. This whole weighing process is committed to the sound discretion of the trial judge.

In the case at bar, Zimeri presented the defense that his "green card," issued August 20, 1951, which he still retained, gave him a permanent immigrant status he assumed would continue indefinitely. The government countered this assertion with proof that he not only failed to return to the United States within a period fixed for his re-entry at a time when he left this country on January 27, 1953, but that thereafter he repeatedly entered the United States on temporary B–2 visas based on claims of Guatemalan citizenship. Thus, the government was not without proof to counter the legal basis of the defense offered. However, the elements of knowledge and intent in criminal charges present questions of fact for a jury and are not conclusively controlled by proof of legal status. In other words, the jury could have believed that even though defendant's subsequent actions had the legal effect of terminating his permanent immigrant status, the continued possession of the "green card" warranted his belief that he was not in fact an illegal alien when he acquired the firearms.

This case is controlled by *Beechum*. There, the government proved that Beechum was found to have the silver dollar in his possession after he had an adequate opportunity to turn it over to proper postal authorities. Nevertheless, we affirmed the admission of evidence of possession of credit cards issued to others ten months previously to counter Beechum's defense that he intended to return the silver coin when he was able to locate his immediate supervisor. Though the credit cards in *Beechum* were far from positive proof of unlawful intent to keep the coin, we held that their possession was relevant to the issue within the meaning of Rule 401, because it bore directly on the plausibility of Beechum's contention that he intended to return the silver coin. In the case at bar, Zimeri's possession of a manual on deception and a notebook indicating he had taken the first step to make use of the manual's information, though falling short of proving he had a knowing intent to deceive one year earlier, does similarly tend to make it more proba-

ble that Zimeri realized at the time of his firearms purchases that he was an illegal alien. This tendency was reenforced by the fact that his status, including his possession of a "green card," remained unchanged during the interval from those purchases until the evidence was discovered in his possession.

Proof that Beechum possessed two credit cards which were issued to patrons on his mail route was clearly prejudicial. However, the court concluded that this proof did not establish any action of a criminal or heinous nature. It was not cumulative or needless proof. The *Beechum* court further characterized the "other acts" proof as temporally concurrent with the crime charged on the assumption that Beechum's possession of the credit cards was a continuing act. In Zimeri's case parallel factors appear. These other acts, making it appear that Zimeri had taken steps to acquire false identification, were clearly prejudicial. Indeed, if the evidence did not have a tendency to prove that he signed the firearms forms with criminal knowledge and intent, it would be irrelevant. However, they did not establish Zimeri had engaged in criminal conduct. Rather, it would have been plausible to have argued that no more was shown than that Zimeri was curious to see if the first step in the scheme described was possible. In view of Zimeri's defense that his "green card" afforded him permanent legal status, the proof was neither cumulative nor needless. Although the time of the execution of the offending forms and the time of discovery of the manual and notebook were separated by just over one year, the temporal separation is approximately that allowed in *United States v. Catano*, 553 F.2d 497 (5th Cir. 1977), and less than many criminal convictions the admission of which we have approved. *See, e. g., United States v. Yaughn*, 493 F.2d 441 (5th Cir. 1974). Moreover, since in the period involved no change in condition occurred which could have affected Zimeri's status, the time lapse is less significant.

### Substantial Reasonable Doubt

■ In disregard of our repeated admonitions, and in neglect of the pattern jury instructions developed by our District Judges Association, courts in this circuit continue their dangerous embroidery on the critical standard requiring that evidence in criminal cases must establish guilt beyond a reasonable doubt. *See United States v. Rodriguez, supra,* and cases cited in Part III thereof. Although we follow precedent and again affirm with an admonition, district courts should heed their own pattern instructions and this advice, lest we repeat the history of the *Mann* charge instruction finally condemned in *United States v. Chiantese*, 560 F.2d 1244 (5th Cir. 1977) (en banc).

### The Ultimate Legal Expert

Fed.R.Evid. 702 provides that if scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence, a witness qualified as an expert by knowledge, experience or education may testify thereto in the form of an opinion, and Rule 704 provides that this testimony is not objectionable because it embraces "an ultimate issue to be decided by the trier of fact." The defendant complains that a United States Immigration and Naturalization Service trial attorney was allowed to express his opinion upon an ultimate issue of law which should have been the subject of an instruction from the court. Specifically, the witness was allowed to testify on redirect examination that when the defendant entered the United States as an immigrant using a B–2 visa, he automatically abandoned the "green card" resident immigrant status which he had originally acquired.

■ To decide the case at bar it is not necessary to reach the broader issue of whether the rules of evidence permit this type of legal opinion to be adduced by expert testimony. The record here disclosed that on earlier cross-examination defense counsel had asked the same attorney if it were not true that the "green card" established Jorge Antonio Zimeri's status as a permanent resident alien, and the witness agreed that it did. It was, therefore, not improper for the court to allow the government on redirect to counter this tactic by inquiring of the same witness as to whether

cd

the defendant's permanent resident status had been abandoned by his subsequent activities.

█ The trial judge correctly instructed the jury that all of this expert opinion was to be given such weight as the jury might think it deserved and, if not based on sound reason or if outweighed by other evidence, might be disregarded entirely. The court further instructed the jury that the defendant contended that he was not unlawfully in the United States but was a permanent resident alien whose status as such had never been rescinded, and it further instructed the jury as to the legal meaning of "immigrant" and B–2 visas.

Finding no reversible error in the proceeding below, the judgment of conviction and commitment appealed from is

AFFIRMED.