No. 82–5028. BUTLER *v.* SOUTH CAROLINA. Sup. Ct. S. C. Certiorari denied. ▮

JUSTICE BRENNAN, dissenting.

Adhering to my view that the death penalty is in all circumstances cruel and unusual punishment prohibited by the Eighth and Fourteenth Amendments, *Gregg* v. *Georgia*, 428 U. S. 153, 227 (1976), I would vacate the death sentence in this case.

JUSTICE MARSHALL, dissenting.

Adhering to my view that capital punishment is unconstitutional under all circumstances, I would grant certiorari and vacate petitioner's death sentence. However, even if I believed that the death penalty could constitutionally be imposed under certain circumstances, I would vacate the death sentence in this case because both the trial court's instructions concerning the standard of proof and the State Supreme Court's standard for reviewing the sufficiency of the evidence failed to assure a reliable sentencing determination.

Following petitioner Horace Butler's conviction for murder, the trial court conducted a separate sentencing proceeding in accordance with South Carolina law, S. C. Code § 16–3–20(B) (Supp. 1981). In order to impose the death penalty, the State was required to prove beyond a reasonable doubt the existence of at least one statutory aggravating circumstance. § 16–3–20(C). The State alleged two aggravating circumstances: that the murder occurred during the commission of a rape and that the murder occurred during the

commission of a kidnaping. See §§ 16–3–20(C)(a)(1)(a) and (c). The trial judge initially stated that he was "extremely dubious" whether the State had presented sufficient evidence of either rape or kidnaping.[1] He subsequently changed his mind concerning the sufficiency of the evidence of rape and submitted that aggravating circumstance to the jury, but he ruled that the evidence of kidnaping did not suffice as a matter of law. The jury then found that the State had established the aggravating circumstance of rape, and sentenced petitioner to death. The South Carolina Supreme Court affirmed the conviction and sentence. 277 S. C. 452, 290 S. E. 2d 1 (1982).

Recognizing the extraordinary consequences of the capital sentencing process, this Court has stressed "the need for reliability in the determination that death is the appropriate punishment in a specific case." *Woodson* v. *North Carolina*, 428 U. S. 280, 305 (1976) (opinion of Stewart, POWELL, and STEVENS, JJ.) (footnote omitted). See *Lockett* v. *Ohio*, 438 U. S. 586, 604 (1978) (opinion of BURGER, C. J.). Accordingly, "we have invalidated procedural rules that tended to diminish the reliability of the sentencing determination." *Beck* v. *Alabama*, 447 U. S. 625, 638 (1980). In this case, errors committed by the trial judge at the sentencing stage and by the State Supreme Court on appeal seriously undermined the reliability of the sentencing determination.

The sentencing court's instructions to the jury concerning reasonable doubt impermissibly lowered the standard of proof required to establish the aggravating circumstance of rape. South Carolina's death penalty statute requires that proof of aggravating circumstances be established beyond a

---

[1] Petitioner, a Negro, had stated to the police that he had met the white victim on her way home, that she had agreed to accompany him to a secluded area, that she had voluntarily engaged in sexual relations with him, that she had then told him she would claim that he had raped her, and that he had panicked and shot her. There was evidence that the victim had received a blow to the head before being shot.

934

reasonable doubt. In my view the reasonable-doubt standard is constitutionally mandated. We have previously recognized that a capital sentencing proceeding is in many respects analogous to a trial on the issue of guilt or innocence. *Bullington* v. *Missouri*, 451 U. S. 430, 438 (1981). Since the death penalty may be imposed only if the State proves at least one aggravating circumstance, an aggravating circumstance is functionally an element of the crime of capital murder and, like any other element of a crime, its existence must be proved beyond a reasonable doubt. *In re Winship*, 397 U. S. 358, 364 (1970). The magnitude of the individual interest at stake in a capital sentencing proceeding requires a standard of proof "designed to exclude as nearly as possible the likelihood of erroneous judgment." *Addington* v. *Texas*, 441 U. S. 418, 423 (1979).

Here the sentencing judge's instructions significantly undercut the full constitutional protection afforded by the reasonable-doubt standard. The jury was told that reasonable doubt means "a substantial doubt for which an honest person seeking the truth can give a real reason," and is "not a weak or slight doubt, but . . . a serious or strong or substantial well-founded doubt as to the truth of the matters asserted by the state." See 277 S. C., at 458, 290 S. E. 2d, at 4. At a minimum, instructions equating reasonable doubt with "substantial doubt" can confuse the jury about the proper standard of proof. See *Taylor* v. *Kentucky*, 436 U. S. 478, 488 (1978). When the instructions also define reasonable doubt as a "serious or strong or substantial well-founded doubt," they create a serious danger that the jury may have found the existence of the aggravating circumstance on a lesser showing than "beyond a reasonable doubt."[2] The danger is

---

[2] The term "reasonable doubt" conveys its own "unmistakable meaning," while "the cumulative effect resulting from the reiteration of the same idea by the use of the words and phrases 'well founded doubt,' 'substantial doubt,' and others of like meaning, is well calculated to fritter away

exacerbated when the jurors are told that they must be able to articulate a "real reason" for the substantial doubt. "The ability to give sound reasons for their doubts or their beliefs is not given to many men, and . . . doubts for which [a person] can formulate no convincing reason often induce him to act or to refuse to act." *Pettine* v. *Territory of New Mexico*, 201 F. 489, 496 (CA8 1912).[3]

Viewed in their entirety, the instructions substantially reduced the reliability of the jury's finding of the aggravating circumstance of rape. "Such a risk cannot be tolerated in a case in which the defendant's life is at stake." *Beck* v. *Alabama, supra*, at 637 (discussing failure to give a jury the option of convicting of a lesser included offense).

The errors in the jury instructions were compounded by the South Carolina Supreme Court's failure to ensure the existence of a sufficient evidentiary basis for the jury's determination. South Carolina law requires the State Supreme Court to review all death sentences and to determine whether the evidence supports the jury's finding of the existence of one or more statutory aggravating circumstances. §§ 16–3–25(A) and (C)(2). In this case, the court rejected petitioner's argument that the evidence of rape was insufficient to submit the aggravating circumstance to the jury. The court stated: "*Any* evidence direct or circumstantial reasonably tending to prove the guilt of the accused creates a jury issue." 277 S. C., at 457, 290 S. E. 2d, at 4 (emphasis in

and destroy all benefit to be derived from this important rule of law." *Frazier* v. *State*, 117 Tenn. 430, 467, 100 S. W. 94, 103 (1906).

The "substantial doubt" instruction has been widely criticized. *E. g.*, *United States* v. *Zimeri-Safie*, 585 F. 2d 1318 (CA5 1978); *United States* v. *Wright*, 542 F. 2d 975 (CA7 1976), cert. denied, 429 U. S. 1073 (1977); *Laird* v. *State*, 251 Ark. 1074, 476 S. W. 2d 811 (1972); *State* v. *Thorpe*, —— R. I. ——, 429 A. 2d 785 (1981).

[3] Many courts have disapproved the requirement that a juror be able to articulate a reason for his doubt. *E. g.*, *Dunn* v. *Perrin*, 570 F. 2d 21 (CA1), cert. denied, 437 U. S. 910 (1978); *Commonwealth* v. *Robinson*, 382 Mass. 189, 415 N. E. 2d 805 (1981).

original), citing *State v. Hill*, 268 S. C. 390, 234 S. E. 2d 219, cert. denied, 434 U. S. 870 (1977). Applying this standard, the court found sufficient evidence to submit the aggravating circumstance to the jury.

The South Carolina Supreme Court's use of the "any evidence" rule to review death sentences is inconsistent with this Court's decision in *Jackson v. Virginia*, 443 U. S. 307 (1979). *Jackson* established a constitutional standard of review for criminal convictions, holding that due process requires a reviewing court to determine whether any rational trier of fact could have found guilt beyond a reasonable doubt. *Id.*, at 318–319.[4] We rejected the "no evidence" rule of *Thompson v. Louisville*, 362 U. S. 199 (1960), as "simply inadequate to protect against misapplications of the constitutional standard of reasonable doubt . . . ." *Jackson v. Virginia*, 443 U. S., at 320. We noted that while the "no evidence" rule could be satisfied by "[a]ny evidence that is relevant," such a bare showing could not "rationally support a conviction beyond a reasonable doubt." *Ibid.*

The State as respondent does not dispute the applicability of *Jackson*. Instead, it argues that the standard of review utilized by the state court was "equivalent to that required in *Jackson*." Brief in Opposition 6. Indeed, according to the State, "the South Carolina Supreme Court has fully embraced, and in fact anticipated the standard of review required by this Court in *Jackson*." *Ibid.* These assertions are simply inaccurate. The South Carolina Supreme Court's "any evidence" standard is substantively identical to the "no evidence" rule of *Thompson*, and the state court itself has long equated the two formulations. In *State v. Bailey*, 253

---

[4] While *Jackson* involved habeas corpus review by a federal court of a state-court conviction, "[t]he implications of *Jackson* are not limited to the habeas corpus context." The Supreme Court, 1978 Term, 93 Harv. L. Rev. 60, 215 (1979). Because the standard outlined in *Jackson* is constitutionally required, state courts are obligated to apply it on direct review.

S. C. 304, 170 S. E. 2d 376 (1969), the court held that "if there is any evidence which tends to establish the guilt of the defendant on the charges alleged a refusal to direct a verdict of acquittal is not an error of law. . . . There is no such error unless there is a *total failure* of competent evidence as to the charges alleged." *Id.*, at 308–309, 170 S. E. 2d, at 378 (emphasis added). Moreover, the state court continues to apply the equivalent of a "no evidence" rule even after *Jackson. E. g., State* v. *Halyard,* 274 S. C. 397, 400, 264 S. E. 2d 841, 842–843 (1980) ("The rule is that unless there is a failure of competent evidence tending to prove the charge in the indictment, a trial judge should refuse a defendant's motion for a directed verdict of acquittal"); *State* v. *Tyner,* 273 S. C. 646, 657, 258 S. E. 2d 559, 565 (1979).

In short, the procedures employed at both the trial and appellate levels did not adequately ensure the reliable imposition of the death sentence. Under these circumstances, the death sentence must be vacated.