943 F.2d 53
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
James FREELAND, Defendant-Appellant.
 Nos. 90-5481, 90-5503.
 United States Court of Appeals, Sixth Circuit.
 Sept. 3, 1991.
 
 Before KENNEDY and NATHANIEL R. JONES, Circuit Judges, and GIBSON, Chief District Judge.*
 PER CURIAM.
 
 
 1
 Defendant-appellant James Freeland appeals his jury conviction for possession with intent to distribute marijuana and for possession of a firearm during and in relation to a drug trafficking offense. For the following reasons, we affirm the convictions.
 
 I.
 
 2
 During January and February of 1989, James Talmage Harrison of Atlanta, Georgia contacted Emmett Moore in Mobile, Alabama concerning the acquisition of a large amount of cocaine or marijuana. Unknown to Harrison, Moore was working as an informant for United States Customs Agent Joseph Bettener. After further negotiations between Harrison and Moore, Harrison provided Moore with three checks totaling $20,000.00 as a down payment for approximately 1,500 pounds of marijuana. Harrison agreed to provide a U-Haul truck to transport the marijuana and gave instructions to Moore concerning the truck's location. Customs agents located the truck and transported it to Shelby County, Tennessee to be used in the transportation of the marijuana.
 
 
 3
 The three checks provided by Harrison were cashed at a bank by Special Agent Bettener, and the currency was used to obtain a quantity of marijuana from Jamaica. Once obtained, the marijuana was transported to Shelby County, Tennessee, and loaded into the U-Haul truck. Harrison arranged with Moore to inspect the shipment of marijuana. Harrison arrived at the location of the U-Haul truck, accompanied by Freeland, in a Buick Riviera. It was revealed that Harrison did not have the balance of the pre-negotiated price with him. After further discussions, Moore agreed to give Harrison the marijuana if Harrison and Freeland would leave their vehicle for collateral and pay the balance due at a later time.
 
 
 4
 The keys to the U-Haul were given to Harrison, and Harrison and Freeland's personal items were placed in the U-Haul. Freeland began to drive away in the truck but at this time the two were taken into custody. When arrested Freeland was in possession of a .45 caliber pistol.
 
 
 5
 On April 20, 1989 a federal grand jury returned a two-count indictment against Freeland and James Talmage Harrison. Count one charged the two with aiding and abetting each other in the unlawful, knowing and intentional possession with intent to distribute approximately 1,250 pounds of marijuana, in violation of 21 U.S.C. § 841(a)(1). Count two charged Freeland with possession of a firearm during and in relation to a drug trafficking offense, in violation of 18 U.S.C. § 924(c). Harrison pled guilty and was later sentenced to 144 months of confinement.
 
 
 6
 Freeland's two-day trial began on December 4, 1989. During the trial, the government discovered that Freeland had rented the U-Haul truck involved in the case. This discovery was made known to Freeland's counsel. The U-Haul company was contacted and copies of the rental documents were obtained. Once obtained the documents were tendered to defense counsel.
 
 
 7
 The jury returned with a verdict of guilty on both counts. On February 23, 1990, Freeland was sentenced to 78 months confinement on count one and 60 months confinement on count two. The sentences were ordered to be served consecutively. This appeal followed. The issues raised on appeal are: (1) whether the trial court erred in admitting the rental agreement documents into evidence without the testimony of the keeper of the records; (2) whether the trial court erred in admitting the rental agreement documents into evidence although the documents were not timely furnished to Freeland in response to discovery requests; (3) whether the trial court erred in finding that Freeland was a conspirator for the purpose of admitting statements of coconspirator; and (4) whether the trial court erred in denying Freeland's requests for a downward departure as a minor participant.
 
 II.
 
 8
 The first issue in this case is whether the trial court erred in admitting the rental agreement documents into evidence without the testimony of the keeper of the records. We review alleged evidentiary errors for abuse of discretion. United States v. Levy, 904 F.2d 1026, 1029 (6th Cir.1990), cert. denied sub nom. Black v. United States, 111 S.Ct. 974 (1991). See also United States v. Hathaway, 798 F.2d 902, 906 (6th Cir.1986) ("Deference to the district court's evidentiary ruling is particularly appropriate when, as here, the question of admissibility is close, and the district court has exercised its discretion in favor of admitting the evidence.").
 
 
 9
 As noted earlier, the government discovered during the trial that the U-Haul involved in the marijuana transaction had been rented by Freeland. Freeland rented the U-Haul in Georgia. After Freeland's rental contract with U-Haul was completed, the contract was sent to Phoenix, Arizona and then placed on microfiche, as this is standard company procedure. The original contract is destroyed and the company relies exclusively upon the microfiche. When the rented vehicle is returned or for some other reason the contract is needed, the company retrieves the contract electronically via the microfiche and makes a copy of the contract if necessary.
 
 
 10
 In order to lay a proper foundation for the documents at trial, the government called Hamilton Zachary, Jr., Senior Network Specialist for U-Haul in Memphis, Tennessee, to testify. Defense counsel objected "based on the hearsay nature and the fact that there is somebody in Phoenix that could come in and identify these records." J.App. at 100. Defense counsel did not think the records were kept in the normal course of business. The government relied on the business records exception to the hearsay rule, Fed.R.Evid. 803(6).
 
 
 11
 Zachary testified that he was familiar with the method of storing records with the U-Haul Company. He further stated that he was a qualified person or custodian of the records in Memphis, that the records were made in the regular course of business of U-Haul, that he was familiar with the mode and method of preparation of the documents, that the documents were prepared under a duty to prepare them accurately, and that the documents were accurate. In ruling that Zachary was qualified to testify for 803(6) purposes, the court stated:
 
 
 12
 I am going to rule that this witness is qualified to explain the methods by which these documents are kept and their custodian status and that the documents are sufficiently trustworthy under the circumstances testified to by this witness and will be admitted under this particular exception. It seems to me that although he is not the actual custodian of the microfiche, he is intimately familiar by virtue of his occupation with the method by which U-Haul maintains its records in a central library and that he has access to that central library vis-a-vis the phone and the fax machine as a result of that job, and that he has provided testimony to meet the various requirements of subsection six to Rule 803.
 
 
 13
 J.App. at 117.
 
 
 14
 A business record is admissible under Fed.R.Evid. 803(6) if four requirements are met:
 
 
 15
 (1) it must have been made in the course of a regularly conducted business activity; (2) it must have been kept in the regular course of that business; (3) the regular practice of that business must have been to have made the memorandum; and (4) the memorandum must have been made by a person with knowledge of the transaction or from information transmitted by a person with knowledge.
 
 
 16
 Redken Laboratories, Inc. v. Levin, 843 F.2d 226, 229 (6th Cir.), cert. denied, 109 S.Ct. 137 (1988). The rental agreement documents and the testimony of Zachary meet the requirements of 803(6). Moreover, 803(6) does not require that the actual custodian testify. Other "qualified" witnesses may testify and lay the appropriate foundation for a business record. Fed.R.Evid. 803(6); Hathaway, 798 F.2d at 906 ("When a witness is used to lay the foundation for admitting records under Rule 803(6), all that is required is that the witness be familiar with the record keeping system.") (citations omitted). Therefore, we find no abuse of discretion in the trial judge's admittance of the rental agreement documents.
 
 III.
 
 17
 The second issue is whether the district court erred in admitting the rental agreement documents into evidence although the documents were not timely furnished to Freeland in response to discovery requests. We think not.
 
 
 18
 It is undisputed that the rental agreement documents admitted into evidence had not been tendered to Freeland's counsel prior to trial in response to discovery requests. The government contends that the documents were not in its possession until after the trial had begun. The government maintains that immediately upon receipt, copies were given to defense counsel.
 
 
 19
 The trial court questioned the government on this matter and heard testimony from United States Customs Special Agent Stephen McCormick. McCormick testified that his part in the investigation was the care and custody of the U-Haul after the arrest had taken place. He testified that when he returned the truck to U-Haul he made a note in his file concerning Freeland's rental of the truck. However, this information was not communicated to the Assistant United States Attorney until after the trial had begun. At this point, McCormick was instructed to obtain the rental agreement documents and to inform defense counsel of this information.
 
 
 20
 After hearing McCormick's testimony and the arguments of the parties, the trial court stated:
 
 
 21
 I am going to deny the motion to prohibit the use of these documents. It appears to me that we had an agent who was not involved in the investigation who happened to have information about certain documents. The information was not producible under the rules of evidence ... I will say that had I thought there were an attempt to conceal producible documents, I would not allow the document in, but I don't think that to be the case in this instance, so I'll deny your motion to prohibit the use of the documents.
 
 
 22
 Government's Brief at 8-9 (quoting trial transcript).
 
 Fed.R.Crim.P. 16(a)(1)(C) provides:
 
 23
 Upon request of the defendant the government shall permit the defendant to inspect and copy or photograph books, papers, documents, photographs, tangible objects, buildings or places, or copies or portions thereof, which are within the possession, custody or control of the government, and which are material to the preparation of the defendant's defense or are intended for use by the government as evidence in chief at the trial, or were obtained from or belong to the defendant.
 
 
 24
 Rule 16(d)(2), governing failure to comply with a Rule 16 request, provides in relevant part:
 
 
 25
 If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule, the court may order such party to permit the discovery ... or prohibit the party from introducing evidence not disclosed, or it may enter such other order as it deems just under the circumstances. (emphasis added).
 
 
 26
 Freeland relies upon United States v. Bryan, 868 F.2d 1032 (9th Cir.), cert. denied, 110 S.Ct. 167 (1989), where the court stated that under Rule 16(a)(1)(C), "The prosecutor will be deemed to have knowledge of and access to anything in the possession, custody or control of any federal agency participating in the same investigation of the defendant." Id. at 1036. In Bryan the Rule 16(a)(1)(C) issue before the court was whether the government was under an obligation to provide documents outside the district.
 
 
 27
 This circuit has considered the meaning of Rule 16(a)(1)(C) only six times. In United States v. Kenan, No. 85-1165 (6th Cir. Sept. 16, 1986), this court stated, in addressing a Rule 16(a)(1)(C) issue, that "a district court retains broad discretion in determining whether to admit undisclosed evidence." (citing United States v. Hartley, 678 F.2d 961, 977 (11th Cir.1982), cert. denied, 459 U.S. 935 (1983); Fed.R.Crim.P. 16(d)(2) & advisory committee note (1966 amendment) subdivision (g) (incorporated into Rule 16(d)(2) by 1974 amendments)). The court further stated that
 
 
 28
 In exercising its discretion to remedy a violation of Rule 16, the district court should consider several factors: the reasons for nondisclosure, the extent of prejudice to the defendant, the possibility of ameliorating any such prejudice by a continuance, and any other relevant circumstances.
 
 
 29
 Kenan, supra. Lastly, citing Anderson v. City of Bessemer City, North Carolina, 105 S.Ct. 1504, 1511-12 (1985), the court in Kenan stated that "any finding of fact made by the district court in the course of its Rule 16(d)(2) determination will not be set aside on review unless it is 'clearly erroneous.' " Kenan, supra.
 
 
 30
 In United States v. Porter, 701 F.2d 1158, (6th Cir.), cert. denied, 464 U.S. 1007 (1983), this court stated, in addressing Rule 16(a)(1)(C), that "The ultimate question is whether the denial of discovery deprived defendants of a fair trial." Id. at 1162.
 
 
 31
 In light of the discretion given the district court under Rule 16 and our previous authority addressing the issue, we find no abuse of discretion. Moreover, there was no evidence that the government had acted deliberately or in bad faith.
 
 IV.
 
 32
 The next issue on appeal is whether the trial court erred in finding that Freeland was a coconspirator for the purpose of admitting statements of coconspirators. This issue need not detain us long.
 
 
 33
 Here, Freeland challenges the admission during the trial of the statements of his coconspirator, Harrison. Fed.R.Evid. 801(d)(2)(E) provides that a statement is not hearsay if offered against a party and is:
 
 
 34
 a statement by a coconspirator of a party during the course and in furtherance of the conspiracy.
 
 
 35
 Before ruling on this issue and before allowing any coconspirator statements to come in, the trial judge conducted a hearing and heard testimony outside the presence of the jury. After the hearing, the judge concluded that the coconspirator statements were admissible.
 
 
 36
 Before admitting the statements of a coconspirator over the objections of a defendant, there must be evidence that there was a conspiracy involving the declarant and the nonoffering party, and that the statement was made during the course and in furtherance of the conspiracy. Bourjaily v. United States, 483 U.S. 171, 175 (1987). Further, the above must be proven by a preponderance of the evidence. Id. at 173, 176-74. Lastly, in making this determination, the trial court may consider the coconspirator's statements. Id. at 177-78.
 
 
 37
 To prove the existence of a drug conspiracy, there must be evidence of an agreement to violate the drug laws, that each conspirator knew of and intended to join the conspiracy and that each conspirator participated in the conspiracy. United States v. Pearce, 912 F.2d 159, 161 (6th Cir.1990), cert. denied sub nom. Thorpe v. United States, 111 S.Ct. 978 (1991).
 
 
 38
 Without a needless recitation of all the evidence pointing towards a conspiracy, the evidence showed that Freeland rented the truck which was to be used to transport the drugs. Further, Freeland arrived with Harrison to receive delivery of the drugs and was carrying a gun during this time. Freeland accompanied Harrison to a hotel where they further negotiated the drug transaction.
 
 
 39
 It is abundantly clear from the record that the trial court did not abuse its discretion in admitting the coconspirator statements. A review of the record reveals that the requirements of Fed.R.Evid. 801(d)(2)(E), 104(a) and Bourjaily were met. The government proved by a preponderance of the evidence that there was a conspiracy involving Harrison and Freeland and that the statements offered were made during the course and in furtherance of the conspiracy.
 
 V.
 
 40
 The final issue in this case is whether the district court erred in failing to reduce Freeland's base offense level two points because he was only a minor participant in the marijuana conspiracy. Our review here is under the clearly erroneous standard. United States v. Silverman, 889 F.2d 1531, 1540 (6th Cir.1989).
 
 
 41
 Section 3B1.2 of the United States Sentencing Guidelines ("U.S.S.G.") grants the sentencing judge discretion to decrease a defendant's offense level based on his role in the offense. This section provides that "If the defendant was a minor participant in any criminal activity, decrease [the offense level] by 2 levels." The application notes to § 3B1.2 state that "a minor participant means any participant who is less culpable than most other participants, but whose role could not be described as minimal." U.S.S.G. § 3B1.2, comment. (n. 3).
 
 
 42
 In making its determination here the district court stated:
 
 
 43
 There's no question that Mr. Harrison's involvement was covered in some detail during the trial and that there was a lot of evidence about his involvement and there was less evidence about your client's involvement, but there was little, if any, evidence about what their relative roles were overall....
 
 
 44
 I am very familiar with the trial. I not only sat through the trial but since then have studied my own notes....
 
 
 45
 [I]t's a little closer question than some of the questions we get under the guidelines, but on a whole I am convinced that I do not have in front of me sufficient proof to determine that Mr. Harrison or Mr. Freeland were more or less culpable than the others.... I don't have any proof in front of me as to who was the organizer of this transaction, who was the leader of this transaction.
 
 
 46
 I do know ... that Mr. Freeland was carrying a loaded automatic weapon, that he rented the truck in question that was being used to haul a great deal of marijuana and that he was the driver later on in that day. The evidence tends to imply maybe that Mr. Harrison was playing a larger role, but so far as the proof really shows it only tells me that Mr. Harrison was playing a larger facial role. It doesn't tell me whether, Mr. Freeland, you put this deal together or whether Mr. Harrison put this deal together. It only tells me that Mr. Harrison was the one out there in front in the first instance.
 
 
 47
 I cannot accept your argument that this defendant was a minor participant.... I'm going to reject the suggestion that there ought to be a downward departure in this case.
 
 
 48
 J.App. at 129-34.
 
 
 49
 Rarely are the sentencing judge's comments so precise and thorough as those presented before us in this case. Often sentencing judges state in a brief, conclusory comment that a downward adjustment is simply not warranted. The judge here gave careful thought to the arguments presented before ruling. As the standard of review here is clearly erroneous, we affirm. United States v. Smith, 918 F.2d 664, 669 (6th Cir.1990) (per curiam), cert. denied sub nom. Sargent v. United States, 111 S.Ct. 1088 (1991).
 
 VI.
 
 50
 Accordingly, we AFFIRM the convictions.
 
 
 
 *
 The Honorable Benjamin F. Gibson, Chief Judge of the United States District Court for the Western District of Michigan, sitting by designation