18931

The STATE, Respondent, v. Cornell RICHARDSON, Appellant.

(171 S. E. (2d) 717)

*W. L. Clinton, Esq.,* of Sumter, *for Appellant,*

*Messrs. Daniel R. McLeod, Attorney General,* and *Emmet H. Clair, Assistant Attorney General,* of Columbia, and *R. Kirk McLeod, Solicitor,* of Sumter, *for Respondent,*

June 12, 1969.

LEWIS, Justice.

Defendant Cornell Richardson has appealed from a conviction of manslaughter for the killing of his son. He was tried in the General Sessions Court of Sumter County and received a sentence of seven (7) years. He seeks in this appeal a new trial upon the grounds that prejudical error was committed in (1) the admission in evidence of a written confession signed by him, (2) the failure of the State to call his daughter as a witness so that he could cross examine her, and (3) giving an instruction to the jury relative to the adverse inference which might be drawn from the failure of a litigant to produce at the trial an available witness. We find no merit in the appeal and the judgment of the lower court is affirmed.

The defendant shot and killed his son about 6:30 P.M. on January 14, 1967. The shooting followed a difficulty with his son a short time before. Shortly after the shooting, he voluntarily surrendered to an officer who had been dispatched by radio to the scene. The officer did not know that the shooting had occurred. Just before the officer reached the scene and while he was stopped at a nearby street intersection, defendant opened the officer's car door and voluntarily told him: "I am the man you are looking for, I just shot my son." The rifle used in the shooting was turned over to this officer by defendant who was then carried to the office of the Sheriff of Sumter County. He was questioned by the officers, including the Sheriff, with whom defendant had previously expressed a desire to talk, and later made a statement or confession which was reduced to writing about 12:30 A. M., on January 15, 1967, approximately six (6) hours after the shooting. The confession was read to defendant, after which he signed it, and a copy was was given to him.

The foregoing written confession was subsequently introduced in evidence at the trial, after a determination by the

trial judge, as shown in the agreed Statement in the record, that "the confession had been voluntarily made by defendant." Defendant contends that the statement was inadmissible because he was not properly informed of, nor did he intelligently waive, his rights within the rules set forth in *Maranda v. Arizona,* 384 U. S. 436, 86 S. Ct. 1602, 16 L. Ed. (2d) 694, 10 A. L. R. (3d) 974.

Miranda set forth the following requirements for the admissibility of statements made by a defendant during custodial police interrogation:

"To summarize, we hold that when an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning, the privilege against self-incrimination is jeopardized. Procedural safeguards must be employed to protect the privilege, and unless other fully effective means are adopted to notify the person of his right of silence and to assure that the exercise of the rights will be scrupulously honored, the following measures are required. He must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires. Opportunity to exercise these rights must be afforded to him throughout the interrogation. After such warnings have been given, and such opportunity afforded him, the individual may knowingly and intelligently waive these rights and agree to answer questions or make a statement. But unless and until such warnings and waiver are demonstrated by the prosecution at trial, no evidence obtained as a result of interrogation can be used against him."

The officer, who took the statement, testified that he advised the defendant of his rights before he was questioned. His testimony was as follows:

"I told him that he had the right to remain silent. I told him that anything he could say, or anything he did say could and would be used against him in a court of law. I told him that at that time, that he had a right to a lawyer and to have him present then and during any questioning of him. I also told him that if he could not afford to hire an attorney that one would be appointed for him by the court free of charge before any questioning of him.

The foregoing warning, given to the defendant prior to the interrogation, fully complied with the requirements of the Miranda decision.

With reference to the question of waiver, this officer testified that, in response to the foregoing warning, the defendant "told me at that time in the presence of the Sheriff and the other officers, that he understood his rights, that he understood his rights fully, he told us that he did not desire an attorney at that time, and stated he wanted to tell his side of the story, he wanted to tell us what happened."

This testimony of the officer, as to the warnings given to the defendant and his waiver of the right to remain silent and to have an attorney present, was corroborated by that of the Sheriff, the testimony of the defendant, and the surrounding circumstances. The defendant testified and at no time did he deny that he was advised of his rights by the officers. In fact, he testified that he was in no way threatened and that he told the Sheriff he wanted to tell his side of it. He remembered making the statement in question and that it was read to him by the officers, but only contended that it did not contain everything as he had stated it. The defendant voluntarily entered the car of the arresting officer, surrendered himself, and stated that he had shot his son, all before the officer knew that the crime had been committed. In addition, he voluntarily turned the rifle used in the shooting over to the arresting officer and asked to see the Sheriff so that he could talk to him. While the defendant received some injury to his eye and mouth in the

preceding difficulty with his son and no doubt was emotionally upset, there is nothing to indicate that his physical condition in any way impaired his ability to know what he was doing and to intelligently waive his rights.

The testimony and surrounding circumstances clearly show that the defendant was properly warned of his rights and that he intelligently waived the privilege against self-incrimination which the required warnings were designed to protect. The confession was properly admitted in evidence under proper instructions to the jury as to the prerequisites for its consideration.

Defendant next contends that he was deprived of the right to confront the witnesses against him and of the right of cross-examination by the failure of the State to call his daughter as a witness. The daughter's name was listed on the back of the indictment as a prospective witness for the State, but she was out of the State at the time of trial and did not testify. Her name was mentioned several times in the testimony and defendant contended that she was one of the main causes of the family difficulties out of which the shooting arose. It is insisted that, because of the materiality of her testimony to the defense interposed, the State was required to call her as a witness so that she could be cross examined by defendant, and that the failure of the State to do so deprived defendant of his Sixth Amendment right to confront the witnesses against him.

The answer to defendant's position turns upon whether the State was required to call the daughter as a witness. For, if there was no duty on the part of the State to call the daughter as a witness, then no right of the defendant to confront the witness or to cross examine her was violated.

While a different rule apparently prevailed at early common law, it is now the general rule that the State is not required to place upon the stand every witness who has knowledge of material facts connected with

the crime charged or whose name is endorsed upon the indictment. The prosecution is required to prove the guilt of the defendant beyond a reasonable doubt and may, in its discretion, determine what witnesses will be called in presenting such proof. 58 Am. Jur., Witnesses, Section 3; Anno: 16 Ann. Cas. 918; 23 C. J. S. Criminal Law § 1017 *et seq;* 7 Wigmore on Evidence, Section 2079.

The foregoing rule was early recognized in this State (*State v. Clark,* 4 Strob. Law 311), and recently affirmed in *State v. Watts,* 249 S. C. 80, 152 S. E. (2d) 684.

In the Clark case, a new trial was sought because the State failed to call a material witness. In affirming the judgment, the court stated: "The rules of evidence are directed to the proof of the issue by competent testimony. They do not require that all the witnesses who may be present when the offense was committed, or who may be supposed to possess information respecting it, should be produced. If the case be fully proved, the verdict will not be set aside, on the suggestion that if a certain witness had been called for the prosecution, he would or might have given evidence to show the prisoner's innocence in court."

Of course, an adverse inference may arise against the State, as any other litigant, from the unexplained failure to call a witness peculiarly available to it. This inference was discussed in *State v. Watts, supra,* and in doing so, the court pointed out, quoting in part from *Davis v. Sparks,* 235 S. C. 326, 111 S. E. (2d) 545, that a litigant, which includes the State of South Carolina in a criminal prosecution, "is not required to produce as a witness every person who may give evidence in his favor."

It is not contended that the State prevented the witness from attending the trial, nor that compulsory process was denied defendant to force her appearance. Neither is there any showing that the State relied upon any statement of the witness in proving its case against the defendant. The contention of defendant that he suffered

legal prejudice from the failure of the State to place the witness in question on the stand is without merit.

Finally, defendant argues that the court erred in instructing the jury that an adverse inference might be drawn from the failure of a litigant to call a witness peculiarly available to him. This question will not be considered. No objection was made to the charge when opportunity was afforded to do so at the trial, and the failure to make such timely objection precludes consideration of the question on appeal. Section 17-513.1, 1962 Code of Laws; *State v. Jamison,* 221 S. C. 312, 70 S. E. (2d) 342.

Affirmed.

Moss, C. J., and BUSSEY, BRAILSFORD and LITTLEJOHN, J.J., concur.