23327

The STATE, Respondent v. Richard Eugene ALEXANDER, Appellant.

(401 S.E. (2d) 146)

Supreme Court

*Deputy Chief Atty. Elizabeth C. Fullwood,* of *S.C. Office of Appellate Defense,* Columbia, *for appellant.*

*Attorney General T. Travis Medlock, Asst. Atty. Gen. Harold M. Coombs, Jr., Staff Atty., Gwendolyn L. Fuller,* Columbia, and *Sol. George M. Ducworth,* Anderson, *for respondent.*

Heard Nov. 11, 1988.

Decided Feb. 4, 1991.

TOAL, Justice:

Appellant Alexander was indicted for armed robbery, kidnapping and criminal sexual conduct in the first degree. A jury convicted Alexander of kidnapping and criminal sexual conduct in the third degree. He was sentenced to life imprisonment for kidnapping, and ten years consecutively, for criminal sexual conduct in the third degree. On appeal, Alexander contends that he was prejudiced because the trial court permitted the prosecuting witness to testify about her mental trauma which allegedly resulted from the incident. He also asserts that he should receive a new trial because of an inconsistency in the jury's verdicts.

## FACTS

Both Ms. Hendrix, the prosecutrix, and Alexander agree that they engaged in sexual intercourse on March 21, 1987. The testimony of Alexander and Ms. Hendrix concerning the events leading to and surrounding the sexual encounter varies considerably.

Ms. Hendrix testified that she went to Wendel's, a bar in Anderson, at approximately midnight to enter a legs contest because she needed money to buy groceries. When she arrived at Wendel's, she parked her car near the back of the building. She then testified that a man approached her from behind, and held a penknife to her throat. After she started screaming, he pushed her to the ground and demanded her keys.

He then forced her into the car and drove her to a deserted road. She testified that Alexander forced her to have sexual intercourse three times—in the back seat, on the hood, and on the truck. Ms. Hendrix testified that during each episode, Alexander "couldn't do anything, and he finally quit." Ms. Hendrix testified that Alexander then took her driver's license, and demanded money. Alexander left Ms. Hendrix with the car, and walked up the road. After he was sixty or seventy feet away from the car, Ms. Hendrix drove away.

Ms. Hendrix claimed that Alexander followed her in a blue car as she drove to Greenville. She arrived at the Silver Fox Lounge in Greenville at approximately 5:00 a.m. She then told a friend that she had been raped. The friend suggested that

she go to the hospital, but Ms. Hendrix decided to first go get something to eat. After eating, Ms. Hendrix went to Easley Baptist Hospital, and was referred to Anderson Hospital.

Evidence adduced from the medical examination showed the presence of one spermatozoa. The examining physician also noted that Ms. Hendrix had a bump on her head. An investigating officer testified that Appellant's palm print was found on the trunk of the car.

Contrarily, Alexander testified that he met Ms. Hendrix at another bar two to three weeks prior to this incident. On the night of March 21st, he testified that he saw Ms. Hendrix in the parking lot of Wendel's. Alexander then stated that Mrs. Hendrix inquired whether he wanted to purchase some cocaine. They went to Ms. Hendrix's car where she showed Alexander the cocaine. He then stated that Mrs. Hendrix told him that she was going to enter the Wendel's legs contest in order to win some money. Alexander told Ms. Hendrix that "with a body like that, she could make a lot of money." Ms. Hendrix then asked Alexander how much he would pay for her body. He responded $50.00. After Alexander showed her the money, she asked if he knew a place where they could have sex. He responded that he did, and he drove Ms. Hendrix's car to a deserted road near his sister's house.

When parked on the deserted road, Alexander offered her the $50.00. She stated that he could pay the money when they finished. They climbed into the back seat and began to have sex. While having sex, Ms. Hendrix complained that he was hurting her, and would have to hurry. She then pushed him off of her. He retreated to the front seat and refused to pay the $50.00. Ms. Hendrix then slapped him. He called her a "road whore" and slapped her back. Alexander testified that, because of the altercation, he stole cocaine from Ms. Hendrix's pocketbook. Ms. Hendrix subsequently dropped Alexander off at his sister's house.

## LAW/ANALYSIS

I. *Mental Trauma Testimony of Victim*

Alexander contends that the trial judge erred in allowing Ms. Hendrix to testify, over his objection, about the emotional consequences resulting from the alleged rape. Ms. Hendrix

testified that since the rape she lost a lot of sleep; that she lost her appetite; that she gets emotionally upset easily; and that she cannot concentrate at work. Ms. Hendrix also claimed that she suffered a loss of weight as a result of the alleged rape. She also testified that she has since purchased a gun to protect herself.

We have not had occasion previously to address the issue of whether the emotional trauma testimony of a rape victim which allegedly resulted from the attack is relevant, and if so, admissible into evidence. We therefore look for guidance to other jurisdictions that have addressed the issue.

a. Relevancy of Testimony

The trial judge is given broad discretion in ruling on questions concerning the relevancy of evidence, and his decision will be reversed only if there is a clear abuse of discretion. *State v. Jeffcoat*, 279 S.C. 167, 303 S.E. (2d) 855 (1983). Evidence is relevant if it tends to establish or make more or less probable some matter in issue upon which it directly or indirectly bears. *State v. Schmidt*, 288 S.C. 301, 342 S.E. (2d) 401 (1986).

The Missouri Court of Appeals in *State v. Phillips*, 670 S.W. (2d) 28 (Mo. App. 1984) considered the admissibility of mental trauma testimony. There, the defendant was convicted of forcible rape, forcible sodomy, first degree robbery, and first degree assault. The victim testified that after the assault, she moved to a new apartment. She also stated that because of the assault, she had a nervous breakdown. Consequently, she acknowledged that she was receiving psychiatric treatment once a week. The Missouri court found that the victim's testimony as to the mental trauma and the receipt of therapy was relevant to establish the brutality of the assaults, the elements of force involved, and the lack of consent thereof—all elements of the State's case. 670 S.W. (2d) at 32.

Similarly, the Missouri court in *State v. Johnson*, 637 S.W. (2d) 157 (Mo. App. 1982) allowed two sexual assault victims to testify that one had dropped out of beauty school and the other moved to Minnesota. The defendant admitted that he had sexual intercourse with the women, but asserted that it was in exchange for $2.00. The court found the victims' testi-

mony relevant to refute the defendant's contention that the sexual activities were consensual. Concluding that "it was inferable from the testimony that these major voluntary changes in the victims' lives were made because of the sexual activities testified to and that such changes would not have been made if the activities had been consented to," the court affirmed the defendant's conviction. 637 S.W. (2d) at 161.

A victim's mother and sister were allowed to describe the changes which occurred in her behavior and personality after an alleged sexual assault in *State v. Burke*, 719 S.W. (2d) 887 (Mo. App. 1986). When the defense to rape is consent, the court emphasized, evidence of a victim's physical and psychological condition is critical to prove the lack of consent. Finding that evidence of behavioral and personality changes rendered the occurrence of the offense more probable than it would be without such evidence, the court held the testimony was relevant.

The Arizona Supreme Court and Court of Appeals have also allowed testimony concerning the mental trauma of victims following a sexual attack. In *State v. Cummings*, 148 Ariz. 588, 716 P. (2d) 45 (Ct. App. 1985), the victim of a sexual assault by a boy scout troop leader testified that he was hospitalized in a psychiatric institution because "he could not handle what Bill [the defendant] had done to him." He also testified that he had tried to commit suicide. The court held that the victim's testimony concerning his medical condition tended to support his testimony that the alleged incident took place since the defendant denied sexual conduct. In *State v. Thomas*, 130 Ariz. 432, 636 P. (2d) 1214 (1981), testimony from several witnesses that the victim had experienced marked personality changes after the incident (a sexual assault) was held relevant since it substantiated the credibility of the prosecutrix.

After reviewing the reasoning of courts in other jurisdictions, we hold that the testimony of Ms. Hendrix's mental trauma is relevant to prove the elements of criminal sexual conduct, including the lack of consent. Evidence of behavioral and personality changes tends to establish or make more or less probable that the offense occurred. *See generally, State v. Schmidt*, 288 S.C. 301, 342 S.E. (2d) 401 (1986).

### b. Prejudicial Effect and Admissibility of Testimony

It is now the overwhelming majority rule that relevant evidence may be excluded for undue prejudice even though no specific exclusionary rule requires exclusion. 1 WIGMORE, EVIDENCE § 10a (Tillers rev. 1983). It does not appear that this Court has ever explicitly approved of this general rule, although such a test has been applied in a variety of contexts.[1] We now adopt the language, in pertinent part, of Federal Rule of Evidence 403 that, "although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." FED. R. EVID. 403. As noted in the comment to the Federal Rule, " '[u]nfair prejudice' within its context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." FED. R. EVID. 403 advisory committee's note.

Applying the test to the unique facts of this case, we hold that the emotional trauma evidence is unduly prejudicial and should have been excluded.

## II. *Inconsistency of the Verdict*

Alexander next contends that he is deserving of a new trial because the jury reached inconsistent verdicts. He notes first that the jury impliedly acquitted him of criminal sexual conduct in the first degree, one definition of which is a sexual battery accompanied by a kidnapping. S.C. Code Ann. § 16-3-652(1)(b) (Law. Co-op. 1976). Having done this, Alexander asserts, it was inconsistent for the jury to have found him guilty of kidnapping under S.C. Code Ann. § 16-3-910 (Law. Co-op. 1976) and criminal sexual conduct in the third degree. S.C. Code Ann. § 16-3-654 (Law. Co-op. 1976).

The rule that a criminal defendant is entitled to a new trial when the jury reaches inconsistent verdicts in his case has been under tremendous attack. The United States Supreme

---

[1] *See, e.g. Merritt v. Grant*, 285 S.C. 150, 328 S.E. (2d) 346 (Ct. App. 1985) (applying test in determining the admissibility of prior conviction evidence); *State v. Hiott*, 276 S.C. 72, 276 S.E. (2d) 163 (1981) (applying test in determining the admissibility of evidence of prior illegal drug use); *State v. Tate*, 288 S.C. 104, 341 S.E. (2d) 380 (1986) (applying test in determining the admissibility of a photograph of the accused); and *State v. Kornahrens, III*, 290 S.C. 281, 350 S.E. (2d) 180 (1986) (applying test in determining the admissibility of photographs of victims' bodies).

Court, in *United States v. Powell*, 469 U.S. 57, 105 S. Ct. 471, 83 L. Ed. (2d) 461 (1984) reaffirmed its ruling in *Dunn v. United States*, 284 U.S. 390, 52 S. Ct. 189, 76 L. Ed. 356 (1932) *overruled on other grounds, Sealfon v. United States*, 332 U.S. 575, 68 S. Ct. 237, 92 L. Ed. 180 (1948) that a defendant convicted by a jury on one count cannot attack the conviction because it was inconsistent with the verdict of acquittal on another count.

The *Powell* court reasoned that a jury might merely be lenient towards a defendant when it refuses to convict him of all counts. *Powell*, 469 U.S. at 65, 105 S. Ct. at 476-477. Further, the Court noted that the government has no recourse to attack the inconsistency by arguing on appeal for *conviction* on all counts. *Id. See also Hess v. Medlock*, 820 F. (2d) 1368 (4th Cir. 1987); *United States v. Scheper III*, 520 F. (2d) 1355 (4th Cir. 1975) (both rejecting rule against inconsistent verdicts). Our sister state of Georgia recently abolished its rule prohibiting inconsistent verdicts in criminal cases. *Milam v. State*, 255 Ga. 560, 341 S.E. (2d) 216 (1986).

This Court has heretofore rejected a great number of arguments invoking the rule against inconsistent verdicts by holding that the verdicts were, in the particular circumstances of those cases, actually consistent. *See e.g. State v. Amerson*, 244 S.C. 374, 137 S.E. (2d) 284 (1964); *State v. Mercado*, 263 S.C. 304, 210 S.E. (2d) 459 (1974); *State v. McFadden*, 259 S.C. 616, 193 S.E. (2d) 536 (1972); *State v. Duck*, 210 S.C. 94, 41 S.E. (2d) 628 (1947); *State v. Williams*, 202 S.C. 408, 25 S.E. (2d) 288 (1943); and *State v. Gore*, 257 S.C. 330, 185 S.E. (2d) 826 (1971). In one case we found inconsistency in the verdicts but determined that the defendant had suffered no prejudice from it. *State v. Hall*, 268 S.C. 524, 235 S.E. (2d) 112 (1977). Alexander has cited no case, and we can locate none, in which we have applied a rule prohibiting inconsistent verdicts to grant a criminal defendant a new trial.

Assuming the verdicts here were inconsistent, we hold that Alexander has suffered no prejudice from such. *State v. Hall*, 268 S.C. 524, 235 S.E. (2d) 112 (1977). Further, because the rule has seldom, if ever, been applied to grant relief, and because the rule has been severely criticized and rejected by most courts, we now follow our sister state of Georgia and abolish the rule prohibiting inconsistent verdicts in this state.

Accordingly, the convictions of the defendant are RE-VERSED and this case is REMANDED to the lower court for a new trial.

GREGORY, C.J., and HARWELL, CHANDLER and FINNEY, JJ., concur.