### 24102

The STATE, Respondent v. Elijah SMITH, Appellant.

(446 S.E. (2d) 411)

Supreme Court

548

*Wanda H. Haile, Asst. Appellate Defender,* Columbia, *for appellant.*

*T. Travis Medlock, Atty. Gen., Donald J. Zelenka, Chief Deputy Atty. Gen., Harold M. Coombs, Jr., Sr. Asst. Atty. Gen., Miller W. Shealy, Jr., Asst. Atty. Gen.,* and *Richard A. Harpootlian, Sol.,* Columbia, *for respondent.*

Heard Dec. 7, 1993.

Decided June 20, 1994.

TOAL, Justice:

This criminal appeal arises from a jury verdict of guilty on the lesser-included offense of voluntary manslaughter. We affirm.

## FACTS

On the night of December 10, 1990, the appellant, Elijah Smith, left his girlfriend's apartment at Saxon Homes in Richland County to purchase more beer. Accompanied by a friend, Anthony Kimble, Smith purchased the beer and was returning to the apartment when he encountered Robert Evans. Smith called out to Evans and the two began a discussion over an alleged $2.00 debt owed by Evans. Evans claiming that he did not have the money began to walk away. Smith called Evans back and the two began a heated argument. At some point in the argument, Evans grabbed Smith and Smith produced a knife stabbing Evans in the heart. Evans died as a result of the stabbing.

On February 14, 1991, Smith was indicted for murder and in May 1992, Smith was tried by jury in Richland County. At trial, Smith was found guilty of the lesser-included offense of voluntary manslaughter and sentenced to imprisonment for thirty years. It is from this conviction that Smith now appeals.

## ISSUES

Smith raises the following three issues on appeal:

1. Whether the trial court erred in denying Smith's requested jury charge for involuntary manslaughter;

2. Whether the trial court erred in denying defense counsel a sufficient opportunity to impeach a critical state witness; and

3. Whether the trial court erred in denying certain requested jury instructions regarding the law of self defense and legal provocation.

## LAW/ANALYSIS

### Involuntary Manslaughter

Smith first argues that the trial court erred in denying his requested jury charge for involuntary manslaughter.[1] The trial court may and should refuse to charge on a lesser-included offense where there is no evidence that the defendant committed the lesser rather than the greater offense. *Casey v. State*, 305 S.C. 445, 409 S.E. (2d) 391 (1991). In

---

[1] The trial court instructed on the law of voluntary manslaughter, self-defense, and murder.

*Casey,* we noted that, "to constitute involuntary manslaughter, there must be a finding of criminal negligence, statutorily defined as a reckless disregard of the safety of others." *Id.* at 447, 409 S.E. (2d) at 392; S.C. Code Ann. § 16-3-60 (1985).

Involuntary manslaughter was recently reviewed in *Bozeman v. State,* 307 S.C. 172, 414 S.E. (2d) 144 (1992) (citing *State v. Barnett,* 218 S.C. 415, 63 S.E. (2d) 57 (1951)), where we stated:

> [f]irst, involuntary manslaughter may be described as the killing of another without malice and unintentionally, but while one is engaged in the commission of some unlawful act not amounting to a felony and not naturally tending to cause death or bodily harm. The second situation may be described as the killing of another without malice and unintentionally but while engaged in the doing of a lawful act with a reckless disregard of the safety of others.

*Id.,* 307 S.C. at 176, 414 S.E. (2d) at 146-147.

Our analysis in *Bozeman* relied heavily on our earlier decision in *State v. Craig,* 267 S.C. 262, 227 S.E. (2d) 306 (1976). In *Craig,* we found no error in failing to charge involuntary manslaughter where a defendant *intentionally* fired a gun, but claimed that he was only firing above the victim's head. In *Bozeman,* on facts similar to *Craig,* we stated that there was "no evidence to support an allegation of mere criminal negligence in the use of a dangerous instrumentality."

The record here demonstrates that Smith acted intentionally in wielding the knife. When Evans grabbed Smith, Smith pulled the knife, a dangerous instrumentality, and stabbed at Evans. Just as in *Craig,* whether Smith intended to harm Evans is irrelevant. The stabbing is clearly not a lawful act, and the intentional use of a dangerous instrumentality does not support the allegation of mere criminal negligence. Because Smith's actions were outside the definition of involuntary manslaughter as we restated recently in *Bozeman,* the trial court did not commit error in refusing to instruct the jury on the law of involuntary manslaughter.

## Impeachment of State's Witness

Smith next argues that the trial court erred in denying defense counsel a sufficient opportunity to impeach Anteaus Walker, an eye witness to the stabbing. Walker testified that

he observed Smith and Evans fighting, saw Evans fall to the ground, and then saw Smith put away a knife. Walker, who called the police, had charges pending against him for intent to distribute crack and possession with intent to distribute crack within one-half mile of a school. Smith attempted to impeach Walker with these crimes expressly against the ruling of the trial judge who had denied the admission of this evidence. The trial judge sent out the jury, and after a discussion with counsel, gave a curative instruction.[2]

Normally, we will not disturb on appeal a trial court's ruling concerning the scope of cross-examination of a witness to test his credibility absent a manifest abuse of discretion. *State v. Lynn,* 277 S.C. 222, 284 S.E. (2d) 786 (1981); *State v. Tyner,* 273 S.C. 646, 258 S.E. (2d) 559 (1979). However, the right to meaningful cross-examination of an adverse witness is included in the defendant's Sixth Amendment right to confront his accuser. *State v. Graham,* — S.C. —, —, 444 S.E. (2d) 525, — (1994); *State v. Brown,* 303 S.C. 169, 399 S.E. (2d) 593 (1991).

In *Delaware v. Van Arsdall,* 475 U.S. 673, 680, 106 S.Ct. 1431, 1436, 89 L.Ed. (2d) 674, 684 (1986), the United States Supreme Court stated:

> a criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby "to expose to the jury the facts from which the jurors . . . could appropriately draw inferences relating to the reliability of the witness."

---

[2]The defense theory was that Walker had taken some gold chains and a gun from Evans after he was stabbed. The obvious inference from the cross-examination was that Walker had been charged with stealing evidence from the crime scene. In response, the trial judge instructed:

> THE COURT: Thank you. Mr. Foreman, members of the jury, just prior to you going out the defendant's attorney, Mr. Kassel, had asked the witness do you have pending charges against you and just before that he was asking the question didn't you take this jewelry off his neck, a question of that sort. Well, I can tell you you must disregard that because there are no pending charges against this defendant [sic] for stealing anything at the crime scene and so just disregard that question and don't get any implication at all from the question.

ROA p. 65.

The Supreme Court further held that the Confrontation Clause does not:

> prevent a trial judge from imposing any limits on defense counsel's inquiry into the potential bias of a prosecution witness. On the contrary, trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, witness' safety, or interrogation that is repetitive or only marginally relevant.

*Id.* at 679, 106 S.Ct. at 1435, 89 L.Ed. (2d) at 683.

Before a defendant can be prohibited from attempting to demonstrate bias on the part of a witness, the record must clearly show that the cross-examination is somehow inappropriate. *Graham, supra.* On the present facts, the trial record is incomplete on the reasoning for prohibiting the impeachment of the witness. There is nothing to indicate that the attempted cross-examination is improper, and therefore, it appears that Smith's Sixth Amendment rights have been violated.

The violation of the Sixth Amendment right to confrontation is not a *per se* reversible error. *Id.; Delaware v. Van Arsdall, supra.* In *Van Arsdall,* the United States Supreme Court remanded the case with instructions to the lower court to determine if the error was harmless beyond a reasonable doubt. *Van Arsdall,* 475 U.S. at 684, 106 S.Ct. at 1438, 89 L.Ed. (2d) at 686. The *Van Arsdall* Court stated:

> [w]hether such an error is harmless in a particular case depends upon a host of factors. . . . The factors include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and of course, the overall strength of the prosecution's case.

*Id.*

The record here shows that Walker was not the only witness to observe the fight and stabbing of Evans. Anthony Kimble, who was actually in a better position to observe the murder, testified that Evans and Smith were arguing over

money. Kimble also testified in detail about the sequence of events which transpired from the inception of the argument to the stabbing. His testimony corroborated Walker's testimony, and in fact, went into far greater detail on each material point.

Walker's testimony was further corroborated by the testimony of the pathologist and the police officer who received the initial report of the crime from Walker. The record also demonstrates that Walker's testimony was not essential to the conviction of Smith. Each of the elements of the crime were supported by other witnesses' testimony; therefore, it becomes quite apparent that Walker's testimony was merely cumulative.

Before the trial court stopped the cross-examination, Walker admitted to being under charges for another crime. The only essential information which was excluded dealt with the specific charges. Moreover, the prosecution's case on the record was of a sufficient overall strength to more than justify the jury's verdict for voluntary manslaughter.

While we agree that the trial court erred in denying Smith the opportunity to further cross-examine Walker, we find that the error was harmless beyond a reasonable doubt and affirm on this issue.

### Denial of Other Jury Instructions

Finally, Smith argues that the trial court erred in denying certain requested jury instructions regarding the law of self-defense and legal provocation. On self-defense, Smith requested an instruction that words accompanied by hostile acts may constitute self-defense and that a person acting in self-defense does not have to wait until an assailant gets the drop on him. On legal provocation, Smith requested an instruction that sufficient legal provocation can be defined as an overt threatening act or physical encounter by the deceased.

The relevant portion of the trial court's jury instruction on self-defense stated:

> [t]he party attacked is a judge of his own peril and can act safely upon the appearance, facts and circumstances surrounding him at the time and the situation should be determined from the standpoint of the defendant, it being for you, the jury, to say whether or not his apprehension of immediate danger of death or serious bodily harm was reasonable and would have been felt by a man of ordinary

reason and firmness. Now, whether there was such a reasonable appearance of danger as would justify the killing is, of course, for you, the jury, to determine and in making your determination as I said earlier you could consider the conditions of both parties. If the appearance to the defendant at the time the fatal shot was fired that such he could not reasonably and safely avoid taking of the life of the deceased and a man of ordinary reason and prudence would have arrived at that same conclusion, then he should be acquitted if he is free from fault in bringing on the immediate difficulty. As I said, he has the right to use force in repelling force or in protecting himself. And he cannot be required to make a nice calculation as to the degree or quantity of the amount of force which may be necessary for the protection from loss of his life or serious bodily harm.

ROA p. 246-47.

The trial court defined legal provocation as "some act which either alone or in connection with words or circumstances is calculated to throw one into a passion, such as someone pulling someone's nose or spitting in their face." ROA p. 243. It is of particular interest that Smith was convicted of voluntary manslaughter, which was the only offense which required legal provocation for conviction. It is clear from the verdict that the jury comprehended this instruction.

Jury instructions should be considered as a whole, and if as a whole they are free from error, any isolated portions which may be misleading do not constitute reversible error. *State v. Sims*, 304 S.C. 409, 405 S.E. (2d) 377 (1991). The substance of the law is what must be instructed to the jury, not any particular verbiage. *State v. Rabon*, 275 S.C. 459, 272 S.E. (2d) 634 (1980).

The record supports the State's contention that the instructions given by the trial judge sufficiently instructed the jury on both self-defense and legal provocation.

Accordingly, for the reasons stated, Smith's conviction for voluntary manslaughter is AFFIRMED.

HARWELL, C.J., and CHANDLER, FINNEY and MOORE, JJ., concur.