525 S.E.2d 519

**The STATE, Respondent,**

v.

**Roger Dale JOHNSON, Appellant.**

**No. 25047.**

Supreme Court of South Carolina.

Heard Jan. 6, 1998.
Decided Jan. 10, 2000.
Rehearing Denied Feb. 16, 2000.

118

Chief Attorney Daniel T. Stacey, of South Carolina Office of Appellate Defense, of Columbia, for appellant.

Attorney General Charles M. Condon, Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka, Assistant Attorney General Lauri J. Soles, all of Columbia; and Solicitor Walter M. Bailey, Jr., of Summerville, for respondent.

TOAL, Justice:

A jury convicted Roger Dale Johnson of the kidnaping and murder of Kimberly Sue Edwards. In the sentencing phase, the same jury found beyond a reasonable doubt that the murder was accompanied by the following aggravating circumstances: (1) robbery while armed with a deadly weapon, (2) kidnaping, (3) larceny while armed with a deadly weapon, and (4) physical torture. The jury sentenced Johnson to death. Johnson appeals. We affirm.

### FACTUAL/PROCEDURAL BACKGROUND

On June 15, 1994, at around 10:30 p.m., Jackie Lee King and her live-in boyfriend, Roger Dale Johnson, walked from their

house to Char's, a nearby restaurant in Greenville County. Johnson and King arrived at Char's at around 10:45 p.m. They sat down at a table and ordered beers. The only Char's employee working at the time was Kimberly Sue Edwards, the bartender. A few moments later, two customers left Char's, leaving Edwards, Johnson, and King alone in the restaurant. It was near closing time, and Edwards began washing glasses and totaling up the receipts. Johnson got up and walked to the counter across from where Edwards was standing. Edwards was on the telephone and had her back to Johnson. After Edwards hung up the phone, Johnson jumped over the counter, grabbed Edwards and held a knife to her throat. Johnson and King proceeded to steal the money from the bar. King wiped off the counter, the table and the juke box to remove any fingerprints.

Johnson and King forced Edwards outside. Edwards tried to escape but was quickly recaptured by Johnson. All three then got into Edwards's black Blazer. King drove them to King's house. They arrived at the house at around 1:00 am. Johnson carried Edwards into the house and placed her in a chair in the living room. King tied Edwards's feet with an electrical cord. After changing clothes, Johnson carried Edwards back to the car. King's teenage son was in the house during this time. The son testified that he helped his mother find the electrical cord. He also stated that a machete he owned disappeared around the time King and Johnson left the house with Edwards.

King resumed driving Edwards's car. Johnson was in the passenger seat, and Edwards was tied up in the backseat. King got on Interstate–26 headed toward Columbia. Soon thereafter, King exited the highway and proceeded down a dead-end road. She stopped in a secluded area where all three got out of the car. King testified she heard Edwards say, "I see what you've got in your hand. No you promised." King then said she saw a machete come up and go down, and she heard "bones crunch twice."

King and Johnson got back into Edwards's car. King testified Johnson had the machete, and it was covered in blood. Johnson also had taken Edwards's purse and jewelry. King and Johnson drove to another dead-end road where

Johnson burned his shirt and Edwards's purse. At around 8:00 a.m., Johnson and King picked up a friend who led them to an area near the Saluda River where Johnson set Edwards's car on fire.

Johnson and King were arrested for Edwards's murder. King entered into a plea agreement with the State by which she agreed to testify against Johnson in exchange for a fifteen year cap on her sentence. Johnson went to trial on February 19, 1996. Johnson was found guilty of murder and kidnaping. The jury sentenced him to death. Johnson appeals, raising the following issues:

1. During the guilt phase, did the trial court err when it admitted into evidence an enlarged version of a photograph of Edwards's two children?

2. During the guilt phase, did the trial court err when it refused to permit Johnson to contradict the testimony of Jerry Ward?

3. During the sentencing phase, did the trial court err when it refused to permit Johnson's sister to ask for mercy on Johnson's behalf?

4. During the sentencing phase, did the trial court err when it submitted the aggravating circumstance of physical torture to the jury?

5. During the sentencing phase, did the trial court err in admitting gruesome, color photographs of the victim, thereby violating the Eighth and Fourteenth Amendments to the United States Constitution?

### LAW/ANALYSIS

### A. GUILT PHASE

#### 1. Photograph of Victim's Children

■ Johnson argues that it was error for the trial court to admit into evidence an enlarged version of a photograph of Edwards's two sons. We disagree.

■ Among the burned remains of Edwards's purse, police found a photograph of Edwards's two sons. The photograph depicted the children sitting on Santa's lap. The photograph

was damaged, but discernible. At trial, the prosecutor offered into evidence a crime scene photograph showing Edwards's photograph amidst the charred remains of the purse. The prosecution's photograph measured 8″ × 12″; Edwards's photograph occupied 2″ × 4″ of the prosecution's photograph. The prosecution intended to use its photograph to establish that the purse belonged to Edwards. Johnson's attorney objected, arguing the enlarged version was prejudicial to Johnson and unnecessary since the original photograph was available to the jury. The trial judge ruled that the original photograph was too fragile for the jury to handle, and the prosecution's photograph would better assist the jury in examining the item. The defense offered to stipulate that the purse belonged to Edwards, but the prosecutor rejected the offer. The trial judge admitted the photograph into evidence.

Ordinarily, the State has the right to prove every element of the crime charged and is not obligated to rely upon a defendant's stipulation. 73 Am.Jur.2d *Stipulations* § 17, at 557 (1974). The relevancy, materiality, and admissibility of photographs as evidence are matters left to the sound discretion of the trial court. *State v. Kornahrens*, 290 S.C. 281, 350 S.E.2d 180 (1986), *cert. denied*, 480 U.S. 940, 107 S.Ct. 1592, 94 L.Ed.2d 781 (1987). However, photographs calculated to arouse the sympathy or prejudice of the jury should be excluded if they are irrelevant or unnecessary to the issues at trial. *State v. Middleton*, 288 S.C. 21, 339 S.E.2d 692 (1986), *cert. denied*, 488 U.S. 872, 109 S.Ct. 189, 102 L.Ed.2d 158 (1988). Yet, there is no abuse of discretion if the offered photograph serves to corroborate testimony. *Id.*

The photograph of the children was clearly relevant in proving that the purse belonged to Edwards. In turn, establishing Edwards as the owner of the purse served to corroborate King's version of events. Johnson's only objection at trial concerned the enlarged size of the prosecution's reproduction. However, Edwards's photograph only covered 2″ × 4″ of the prosecution's 8″ × 12″ photograph. Moreover, the trial court determined that the original photograph was too fragile for the jury to handle and, as a result, admitted the prosecution's photograph into evidence. Johnson nevertheless argues the admission of the photograph was unnecessary because there

were other items among the remains bearing the name of Edwards's husband. However, it is generally recognized that the prosecution and the defense should be afforded wide discretion in the selection and presentation of evidence. *See State v. Richardson*, 253 S.C. 468, 474, 171 S.E.2d 717, 719 (1969)("The prosecution is required to prove the guilt of the defendant beyond a reasonable doubt and may, in its discretion, determine what witnesses will be called in presenting such proof."), *cert. denied*, 396 U.S. 955, 90 S.Ct. 427, 24 L.Ed.2d 421 (1969); *see also Imbler v. Pachtman*, 424 U.S. 409, 426, 96 S.Ct. 984, 993, 47 L.Ed.2d 128 (1976)("Attaining the system's goal of accurately determining guilt or innocence requires that both the prosecution and the defense have wide discretion in the conduct of the trial and the presentation of evidence."); *People v. District Court In & For Denver*, 767 P.2d 239 (Col.1989). We therefore conclude that the trial court did not abuse its discretion by admitting the prosecution's photograph into evidence.

### 2. Testimony of Jerry Ward

■ Johnson argues that the trial court erred when it refused to permit Johnson to contradict the testimony of Jerry Ward. We disagree.

Ward was in a jail cell next to Johnson for approximately six months. During this period, Ward and Johnson frequently spoke to one another about their cases and passed notes back and forth. Ward was called by the prosecution to testify at Johnson's trial. During cross-examination, the following colloquy occurred between Johnson's attorney and Ward:

Q. Now, would you consider yourself easygoing, laid back, levelheaded?

A. Would I? I would love to consider myself that way.

Q. And really don't get frustrated or excited or overly emotional, is that correct?

A. I can't say overly emotional. I get frustrated, overly excited and emotional, sir.

Q. Okay. But for the most part, you are a pretty even keel type person?

A. I would hate to flatter myself and say yes and you come up with something derogatory—

Q. No. You go right ahead and flatter yourself, Mr. Ward. That's fine.

A. No, I'm not going to do that. I'm going to—I'm going to say that I'm—I'm far from being an angel, sir, but I'm not even in the running for the devil.

Q. Mr. Ward, I didn't ask you whether you were an angel. Are you—do you consider yourself rational?

A. For the most part, yes.

Q. Okay.

A. Not entirely.

At this point, defense counsel attempted to cross-examine Ward with a letter Ward had written to another inmate while in jail. In the letter, among other derogatory remarks, Ward advises the inmate, "I could in fact be in error of my opinion of you being an ass_____. You could in fact qualify to be considered a—what I have been heard referred to as a complete ass_____, and I am known for my proficiency in giving credit where there is credit due." The prosecutor made a relevancy objection which the trial court sustained on the ground that the letter would tend to confuse the jury.

 Johnson argues the letter was relevant to contradicting Ward's characterization of himself as a rational, calm person. We disagree. " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 401, SCRE. "A witness may be cross-examined on any matter relevant to any issue in the case, including credibility." Rule 611(b), SCRE. Considerable latitude is allowed in cross-examination to test a witness's credibility. *Martin v. Dunlap*, 266 S.C. 230, 222 S.E.2d 8 (1976). However, a trial judge may impose reasonable limits on cross-examination based upon concerns about, among other things, harassment, prejudice, confusion of the issues, witness safety, or interrogation that is repetitive or only marginally relevant. *State v. Jenkins*, 322 S.C. 360, 474 S.E.2d 812 (Ct.App.1996). An appellate court will not disturb a trial court's ruling concerning the scope of

cross-examination of a witness to test his or her credibility, or to show possible bias or self-interest in testifying, absent a manifest abuse of discretion. *State v. Smith,* 315 S.C. 547, 446 S.E.2d 411 (1994).

Here, Ward did not characterize himself as a totally rational or calm person. He admitted he was "far from being an angel," and he could get "frustrated, overly excited and emotional." Moreover, the jury was aware of Ward's lengthy criminal record, which included escape from prison. Thus, the letter was not relevant to any issue at trial, including Ward's credibility. It merely demonstrated that Ward was capable of hurling expletives at other inmates. It was, in fact, consistent with his characterization of himself. We conclude that it was not an abuse of discretion for the trial court to exclude the letter on the ground that it would tend to confuse the jury.

## B. SENTENCING PHASE

### 1. Testimony of Johnson's Sister

Johnson argues that the trial court erred when it refused to permit his sister from asking for mercy on his behalf. We disagree.

During the sentencing phase, Johnson's sister was called to testify on his behalf. Shortly into her testimony, she became emotional, and the trial judge was forced to remove the jury from the courtroom so she could compose herself. While the jury was out, Johnson's attorney informed the court that he intended to ask Johnson's sister whether she wanted Johnson to die. The prosecutor objected. The trial court ruled that the defense could not ask the question pursuant to *State v. Matthews,* 296 S.C. 379, 373 S.E.2d 587 (1988), *cert. denied,* 489 U.S. 1091, 109 S.Ct. 1559, 103 L.Ed.2d 861 (1989). After the jury returned, Johnson's sister testified about the abusive family environment she and her brother endured while growing up. She also opined that Jackie King was manipulative and a negative influence on her brother. Johnson's sister was finally asked whether she loved her brother. She responded, "Yes, sir. With all of my heart."

In *State v. Matthews,* the defendant argued that the trial court erred when it prohibited defense counsel from asking members of defendant's family which sentence they thought

defendant should receive. We held that there was no error because "[t]he line of questioning prohibited ... went to the ultimate issue to be decided by the jury—life imprisonment versus death penalty—and was properly reserved for jury determination." *State v. Matthews*, 296 S.C. at 393, 373 S.E.2d at 595.

 We later distinguished *Matthews* in *State v. Torrence*, 305 S.C. 45, 406 S.E.2d 315 (1991). In *Torrence*, we adopted the Georgia Supreme Court's distinction between a plea for mercy and the ultimate question to be decided by the jury:

> [A]lthough a defendant may present witnesses who know and care for him and are willing on that basis to ask for mercy on his behalf, a defendant may not present witnesses to testify merely to their religious and philosophical attitudes about the death penalty .... Nor is a defendant entitled to present the opinion of a witness about what verdict the jury "ought" to reach.

*Torrence*, 305 S.C. at 51, 406 S.E.2d at 318 (*quoting Childs v. State*, 257 Ga. 243, 357 S.E.2d 48, 60 (1987)). In *Torrence*, defense counsel attempted to ask the defendant's mother the following question at sentencing: "Do you have a basis for asking this jury to spare your son's life?" The prosecutor objected, arguing the question went to the ultimate issue to be decided by the jury. The trial court sustained the objection. We disagreed and found the question was proper because it sought only to have the witness make a general plea for mercy for the life of her son. We distinguished *Matthews* by stating, "[Torrence] did not seek to elicit testimony about what verdict the witness thought should be imposed, as was the case in *State v. Matthews*." *Id.* at 51, 406 S.E.2d at 319. Nevertheless, we found that the defendant was not prejudiced by the trial court's ruling because the witness was able to make a general plea for mercy on the defendant's behalf.

 Here, the defense did not seek to elicit the opinion of Johnson's sister about what verdict the jury "ought" to reach. Defense counsel merely proposed to ask her whether *she wanted* Johnson to die. Like *Torrence*, the prohibited question did not address the ultimate issue to be decided by the jury. However, despite the trial court's ruling which limited her testimony, Johnson's sister was able to make a general

plea for mercy on her brother's behalf. In addition to her testimony concerning their abusive family life, she clearly expressed her love and affection for Johnson at trial. Therefore, we conclude Johnson has failed to demonstrate that he was prejudiced by the trial court's ruling.

### 2. Physical Torture

██ Johnson argues the trial court erred when it submitted the aggravating circumstance of physical torture to the jury. We disagree.

██ In determining whether to submit an aggravating circumstance to the jury, the trial court is concerned only with the existence of evidence, not its weight. *State v. Smith,* 298 S.C. 482, 381 S.E.2d 724 (1989), *cert. denied,* 494 U.S. 1060, 110 S.Ct. 1536, 108 L.Ed.2d 775 (1990). The aggravating circumstance is properly submitted if supported by any direct or circumstantial evidence. *State v. Butler,* 277 S.C. 452, 290 S.E.2d 1, *cert. denied,* 459 U.S. 932, 103 S.Ct. 242, 74 L.Ed.2d 191 (1982).

At trial, the State's expert pathologist testified Edwards died as a result of blood loss, and it took approximately ten minutes for her to die. The pathologist conceded he could not determine the order in which the blows were struck, and any one of the blows to the head may have rendered Edwards unconscious. The pathologist further testified the blows would have been painful if Edwards were in fact conscious. Johnson argues the evidence does not demonstrate beyond a reasonable doubt that Edwards consciously experienced pain during the attack. Consequently, the aggravating circumstance of physical torture should not have been submitted to the jury.

██ In *State v. Elmore,* 279 S.C. 417, 308 S.E.2d 781 (1983), *overruled on other grounds by State v. Torrence,* 305 S.C. 45, 406 S.E.2d 315 (1991), we adopted the Georgia Supreme Court's definition of torture. *See Hance v. State,* 245 Ga. 856, 268 S.E.2d 339, 345 (1980). Under this definition, torture occurs (1) when the victim is subjected to serious physical abuse before death; or (2) when the victim is subjected to an aggravated battery before death. *Elmore,* 279 S.C. at 422, 308 S.E.2d at 785. Johnson contends that conscious

awareness of pain is a necessary component of physical torture. We disagree. Physical torture is not predicated upon the amount of pain suffered by a murder victim. Although conscious awareness of pain may buttress the conclusion that the victim was subjected to serious physical abuse before death, its absence does not foreclose a finding of physical torture; the abusive and depraved nature of the homicidal assault is not erased solely because the victim mercifully may have been rendered unconscious at the outset of the attack.

Here, Edwards suffered massive blows from a machete before finally bleeding to death. In addition to the pathologist's testimony, a SLED agent testified that the blood stain patterns indicated Edwards had fallen in one spot and then rolled to her final resting place several feet away. The agent opined that Edwards had rolled on her own after the initial blow. Moreover, photographs presented by the prosecution indicated Edwards had suffered a defensive-type laceration on her left index finger. Therefore, we conclude that the evidence warranted the submission to the jury of the aggravating circumstance of physical torture.

### 3. Photographs

Johnson argues that the trial court erred in admitting into evidence gruesome, color photographs of the victim, thereby violating the Eighth and Fourteenth Amendments to the United States Constitution. We disagree.

In sentencing proceedings, the trial court may admit photographs which depict the bodies of the murder victims in substantially the same condition in which the defendant left them in order to show the circumstances of the crime and the character of the defendant. *Kornahrens,* 290 S.C. 281, 350 S.E.2d 180. They are also admissible when material and relevant to an aggravating circumstance. *State v. Franklin,* 318 S.C. 47, 456 S.E.2d 357, *cert. denied,* 516 U.S. 856, 116 S.Ct. 160, 133 L.Ed.2d 103 (1995). However, photographs that are unfairly prejudicial so as to outweigh their probative value are not admissible. To constitute unfair prejudice, the photos must create a tendency to suggest a decision on an improper basis, commonly though not necessarily, an emotional one. *State v. Alexander,* 303 S.C. 377, 401 S.E.2d 146 (1991).

Here, Johnson challenges the admissibility of four crime scene photographs and five autopsy photographs.[1] The crime scene photographs were introduced into evidence during the testimony of SLED agent Wade Fleming. Fleming had taken the photographs shortly after arriving at the scene. The first photograph showed Edwards's entire body as discovered by police at the crime scene. The second photograph was a close-up view of Edwards's left hand and forearm. It revealed a defensive-type laceration on her left index finger. The last two photographs were close-up shots of Edwards's head and chest. One photograph showed police pulling back Edwards's hair to reveal a head wound. The other photograph showed Edwards's head undisturbed.

■ These photographs were relevant for a number of reasons. First, Fleming used them to illustrate the blood stain patterns and debris found on Edwards's clothing. Based upon this evidence, Fleming testified Edwards had rolled more than six feet after the initial blow. Next, the photographs of Edwards's head and hand showed the brutality of the crime and the nature of the physical abuse endured by Edwards prior to her death. This evidence was not only pertinent to showing the circumstances of the crime and the character of the defendant, but it went directly to establishing the aggravating circumstance of physical torture. We therefore find the prejudicial effect of the crime scene photographs did not outweigh their probative value.

■ The five autopsy photographs were introduced during the testimony of the State's expert pathologist. Three of the photographs were close-up pictures of Edwards's nearly severed shoulder. The remaining two pictures showed Edwards's head wounds. Although each of the photographs were under-

---

1. We note that not all of the crime scene photographs designated by Johnson on appeal were initially transmitted to this Court from the trial court. The absent photographs were identified as State's Exhibits nos. 174, 175, and 176. Eventually, all of the pertinent exhibits were transferred to this Court for appellate review. The complete list of crime scene photographs challenged by Johnson on appeal includes State's Exhibits nos. 4, 174, 175, and 176. The autopsy photographs include State's Exhibits nos. 6 through 10. Johnson does not challenge State's Exhibit no. 5, an autopsy photograph of Edwards's left hand. We have examined all of these exhibits.

standably difficult to look at, they nevertheless revealed the true nature of the attack and would have permitted the jury to comprehend the precise damage inflicted by the machete. This, in turn, would have allowed the jury to determine the existence of physical torture by assessing the seriousness of the physical abuse inflicted upon Edwards's body before her death. We therefore conclude the prejudicial effect of the autopsy photographs did not outweigh their probative value.

## PROPORTIONALITY REVIEW

■■■ We have conducted the proportionality review pursuant to S.C.Code Ann. § 16–3–25 (1985). We have reviewed the entire record and conclude the death sentence was not the result of passion, prejudice or other arbitrary factors, and the evidence supports the jury's finding of the aggravating circumstances. The death sentence is not excessive or disproportionate to the penalty imposed in similar cases. *See State v. Bennett,* 328 S.C. 251, 493 S.E.2d 845 (1997); *State v. Tucker,* 324 S.C. 155, 478 S.E.2d 260 (1996), *cert. denied,* 520 U.S. 1200, 117 S.Ct. 1561, 137 L.Ed.2d 708 (1997).

## CONCLUSION

The trial court is **AFFIRMED** on all issues.

MOORE, WALLER and BURNETT, JJ., concur.

FINNEY, C.J., dissenting in a separate opinion.

FINNEY, Chief Justice:

I respectfully dissent. The admission of the enhanced photograph depicting the victim's children served no legitimate evidentiary purpose, and acted only to arouse the jury's sympathy and prejudice, and therefore should have been excluded. *Compare State v. Rosemond,* 335 S.C. 593, 518 S.E.2d 588 (1999)(Finney, C.J., dissenting); *State v. Livingston,* 327 S.C. 17, 488 S.E.2d 313 (1997). Further, in my opinion, the trial judge abused his discretion in excluding the letter proffered by appellant to impeach the witness. I simply do not understand, and the majority does not explain, how the letter would have confused the jury. In my view, these two evidentiary errors in the guilt phase require a reversal.

Finally, I cannot agree that the trial court's erroneous limitation on appellant's sister's plea for mercy was harmless error. Her statement, in response to a single question, that she loves appellant with all her heart is not the equivalent of a general plea for mercy. *Compare State v. Torrence*, 305 S.C. 45, 406 S.E.2d 315 (1991)(harmless error where appellant's mother permitted to testify she did not want him to die, that she loved him, and that she wanted him to get help).

For the reasons given above, I would reverse and remand for a new trial.