613 S.E.2d 374

**The STATE, Respondent,**

v.

**Brennan Shay JACKSON, Appellant.**

**No. 25983.**

Supreme Court of South Carolina.

Heard March 16, 2005.

Decided May 9, 2005.

30, 603 S.E.2d 410 (2004); *In re Gravely,* 321 S.C. 235, 467 S.E.2d 924 (1996).

330

Jack B. Swerling, of Columbia, for Appellant.

Attorney General Henry Dargan McMaster; Chief Deputy Attorney General John W. McIntosh; Assistant Deputy Attorney General Salley W. Elliott; Senior Assistant Attorney General Norman Mark Rapoport, all of Columbia; and Solicitor Robert D. Robbins, of Summerville, for Respondent.

Justice WALLER:

The appellant Brennan Shay Jackson (Jackson) was convicted of grand larceny and sentenced to ten years. He contends the trial court erred in admitting a photograph of him at a

Halloween party when he was dressed as a prisoner and in refusing to allow him to introduce polygraph results in rebuttal after an insurance adjuster had testified that he had asked Jackson whether he would be willing to take a polygraph. We affirm.

## FACTS

Jackson is the nephew of Barbara and Bobby Ayer and the owner of a pawnshop. Jackson also cleaned and did odd jobs for the Ayers three days/week. The State alleged that sometime between June 1 and December 16, 2000, Jackson stole approximately $190,000–200,000 in old collectible coins and bills from the Ayer's two home safes. There was no sign of forced entry.[1]

Jackson testified Barbara paid him between $500–1,000 per week. Further, he testified Barbara gave him gold and silver coins and old money on many occasions. Barbara, however, testified she paid him only $100 per week and she never paid him with silver dollars or other old money. Over the years, Barbara had given Jackson large sums of money to help him purchase a car, a truck, and a cruise for Jackson's father, and open the pawnshop.[2]

Upon discovering that the coins and money were missing, Bobby called his insurance agent. Insurance adjuster Bill Spell investigated the theft. During his investigation, Spell interviewed Jackson and Stephen Phillips who had worked for the Ayers during the fall of 2000. At trial, Jackson admitted he sold some old paper money and coins worth several hundred dollars to John "Smokey" Dukes, Phillips' cousin, at a Halloween party. In fact, Jackson admitted some of the money that was sold to Smokey Dukes came from the Ayer's house. However, he testified his aunt had given him the money. Jackson also admitted he sold approximately $8,000 worth of Krugerrands to Carolina Gold and Silver and Baxley's Pawnshop. At trial, Phillips testified about Jackson's

---

1. Two rings initially thought to also have been stolen were later discovered in the Ayer's home.

2. Barbara had made a deathbed promise to her mother (Jackson's grandmother) to take care of Jackson and by all accounts had been extremely generous to Jackson over the years.

various cash expenditures between June and December 2000. He specifically testified Jackson spent $800 to hire a band to play at the farmer's market for a football game; bought some guns; and paid $2,000 in labor costs for Phillips to build him a dog kennel. He also testified Jackson bought a $13,000 boat in March 2000. Additionally, there was testimony Jackson paid $4,000 cash for a cruise in the fall of 2000.

## ISSUES

1) Did the trial court err in admitting photographs of Jackson in a prisoner's costume at a Halloween party?

2) Did the trial court err in denying Jackson's request to introduce evidence that he had passed a polygraph test?

## DISCUSSION

### 1) Photograph

■ During a pre-trial hearing, Jackson objected to the State's introduction of several photographs taken of appellant at a Halloween party held in 2000.[3] Appellant was dressed as a prisoner. The State later sought to introduce only one of the photographs to show appellant was at the party along with two State's witnesses who would testify that Jackson had sold them things stolen from the victims. Jackson contended the photograph was prejudicial because he was dressed in a prison uniform. He argued the photograph was more prejudicial than probative.

■ On appeal, Jackson contends the photograph gave the impression that he had a light-hearted attitude toward lawlessness and found criminal behavior amusing. Jackson contends the photograph was irrelevant to any issue. Further, he argues he never contested he was at the Halloween party and offered to stipulate he was there.

---

**3.** When the State introduced the photograph during trial, Jackson asked the trial court to note his pre-trial objection to its admission. The State argues that Jackson failed to state his objection in terms of Rule 403, SCRE, and therefore is barred from arguing this rule on appeal. While Jackson did not argue specifically Rule 403, he clearly argued that the prejudicial value of the photo outweighed any probative value. Accordingly, Jackson properly preserved this objection.

The State, however, has the right to prove every element of the crime charged and is not obligated to rely upon a defendant's stipulation. *State v. Johnson,* 338 S.C. 114, 122, 525 S.E.2d 519, 523 (2000). The relevancy, materiality, and admissibility of photographs are matters left to the sound discretion of the trial court. *State v. Kornahrens,* 290 S.C. 281, 350 S.E.2d 180 (1986). "[T]here is no abuse of discretion if the offered photograph serves to corroborate testimony." *Johnson,* 338 S.C. at 122, 525 S.E.2d at 523. However, photographs calculated to arouse the sympathy or prejudice of the jury should be excluded if they are irrelevant or not necessary to substantiate material facts or conditions. *State v. Brazell,* 325 S.C. 65, 480 S.E.2d 64 (1997). To constitute unfair prejudice, the photographs must create "an undue tendency to suggest a decision on an improper basis, commonly, though not necessarily, an emotional one." *State v. Alexander,* 303 S.C. 377, 382, 401 S.E.2d 146, 149 (1991). Even if evidence was irrelevant and thus wrongly admitted by the trial judge, its admission may constitute harmless error if the irrelevant evidence did not affect the outcome of the trial. *State v. Johnson,* 306 S.C. 119, 410 S.E.2d 547 (1991).

The State contends it introduced the photograph to show Jackson was at the party and had sold stolen items. While the photograph does not show any of the stolen items, Jackson testified that in the photograph he was selling some of the alleged stolen goods to Smokey Dukes. Thus, the photograph was clearly relevant.

Further, the photo would not cause the jury to reach a decision on an improper basis. The photo was taken prior to Jackson being identified as a potential suspect and, in fact, prior to the discovery of the crime. We find any prejudice from Jackson having on a prisoner's costume is outweighed by the photograph's probative value. Accordingly, we do not think that the admission of this particular photograph is reversible error.

### 2) Polygraph test results

Jackson contends the trial court erred in denying his motion to introduce evidence that he had passed a polygraph test given by a private polygrapher. Jackson contends the

State opened the door and that he should have been allowed to reply. During the trial, the State presented a recording of a conversation that the insurance investigator Spell had taped with Jackson.[4] During this conversation, Spell asked Jackson whether he would be willing to take a polygraph.[5] Jackson answered he would be willing to take a polygraph. Jackson did not make any contemporaneous objection to the reference to a polygraph test. In fact, when the tape of the conversation was initially played, the trial court specifically asked Jackson if he had any objection to the tape being played and he stated no. Immediately after the tape was played, the State moved into evidence and Jackson again stated he had "[n]o objection at all."

Jackson then informed the trial court that he had a matter he wanted to take up with the court. Jackson stated that the State had opened the door for the admission of polygraph *results*.[6] The Solicitor responded that he did not believe the door had been opened and further he pointed out that the Sheriff had offered Jackson a polygraph to be administered by State Law Enforcement Division (SLED) but Jackson never took up his offer. The trial court told Jackson he would have to hold a *Council*[7] hearing to determine if the polygraph results were admissible.

Jackson told the trial court he had not prepared for a *Council* hearing and after some discussion stated he would think about it overnight. The Solicitor reiterated that if Jackson presented any evidence of polygraph test results, the State "intend[ed] to call the Sheriff to say he was prepared to

4. We note trial counsel was present at this meeting.

5. The pertinent part of the conversation is as follows:
   Spell: Would you be willing to take a polygraph?
   Appellant: Yeah. That'd be fine.
   Spell: Okay. You don't have any problem doing that?
   Appellant: Unhuh. That's fine.

6. Apparently, prior to trial Jackson had taken a private polygraph and passed. However, neither the results of this polygraph nor the questions asked during the test were proffered for the record.

7. *State v. Council*, 335 S.C. 1, 515 S.E.2d 508 (1999)(holding the admissibility of polygraph tests must be analyzed under Rules 702 and 403, SCRE.).

take [Jackson] to S.L.E.D. and [Jackson] did not take him up on it." The next morning trial counsel stated he had thought about it and decided that he would simply ask the witness whether Jackson had agreed to take a polygraph and whether one was administered and "leave it at that." Clearly, Jackson abandoned his motion to admit the polygraph test results.[8]

On appeal, Jackson contends that "while any potential *Council* issue was waived, the issue of rebuttal was clearly raised and ruled upon by the trial court." Jackson contends the State "opened the door ... for evidence that [Jackson] took [a polygraph test] and passed it" and he should have been allowed to introduce polygraph evidence in rebuttal.

■ When a party introduces evidence about a particular matter, the other party is entitled to explain it or rebut it, even if the latter evidence would have been incompetent or irrelevant had it been offered initially. *See State v. Foster*, 354 S.C. 614, 582 S.E.2d 426 (2003). However, here, Jackson waived any argument he had when he acquiesced the next morning and stated he would ask Spell if he had administered a polygraph and "leave it at that." Jackson did not note any objection. Jackson made a decision to not introduce any evidence of the polygraph test results in rebuttal. Accordingly, this issue is not preserved.

■ In any event, Jackson was not prejudiced. *State v. Locklair*, 341 S.C. 352, 535 S.E.2d 420 (2000) (holding error without prejudice does not warrant reversal). The testimony before the jury was that Jackson stated he would be willing to take a polygraph and Spell testified he never offered him one. This would *not* leave the jury with the impression that Jackson had taken and failed a polygraph. Accordingly, based on the foregoing, Jackson's conviction and sentence are

**AFFIRMED.**

TOAL, C.J., BURNETT, PLEICONES, JJ., and Acting Justice MARC H. WESTBROOK, concur.

---

**8.** Spell later testified that he asked Jackson if he would be willing to take a polygraph and his response was "sure" but he never offered Jackson one.